Shippen,
 
 JuJlice.
 

 On this Policy, the afliired has engaged to prove' in any Court of Pennfylvanui, that the
 
 /Mount Vernon
 
 was American property ; and if is, alfo, incumbent on him to prove, that the fhip failed upon thé voyage infured j that ibe has been captured, and condemned. On fhe quell ion of property, the American Rcgiiler was pi oduccd, which contain.-,
 
 *492
 
 the oath cf the Plain ;ff, an American Citizen, that he was the foie owner of the
 
 Mount Vernon
 
 ; and on the other points, there is'fu}] proof of the failing, capture, and condemnation op the ihip. She is not, ’however, condemned by the final decree as Briciih property ; nor, indeed, are any of the.five caufes af-fisrned in the procée'ings, legitimate caufes of condemnation.
 

 The PI. intiff was difpofeti, on. general principles, to leave his caufe on this evidence; but, in order to repel the Defendant’s allegation, that the property of the ihip, though apparently American, was, in reality, Britííh, a variety of fa<ftp have been adduced, to explain the nature of a tranfacRion, whiclfc occurred between him and
 
 Mr. Dunkerfon,
 
 in relation to a ¿ale and transfer of the
 
 Mount Vernon.
 
 The refult feem¾-briefly, to be this :
 
 Mr. Dunkerfon
 
 was an Engliih gentleman, who came hither with a view to-fettle ; and, in order to mani-feiV his intention, took an oath of allegiance to the ft.ite of
 
 Pennfylvauia,
 
 though he had not been long enough in the •country to entitle bimfelf to naturalization, under the a<R of-Gon<>refs. Contemplating a circuitous voyage from
 
 America
 
 to
 
 England,
 
 and thence to the
 
 Eajl Indies,
 
 he applied to Mtffrs.
 
 Willings & Francis
 
 to procure a ihip for him; and thofe gentlemen agreed abfolutely with the Plaintiff for the purchafe of the
 
 Mount Vernosi,
 
 the bill of faje being made out by him, and fent to them, upon terms of payment precifely afeertained. It then, however, occurred to Mr.
 
 Dunkerfon,
 
 that as he hrej not yet acquired the rights of American citizenihip, he could not enjoy the advantages, whiyh h" propoied to derive from his pmj icti’d voyaze. For, the trade from
 
 England
 
 to the
 
 Raft Indies
 
 is, by the law of that kingdom, a monopoly ; no
 
 Britijh
 
 fubjeft can, individually, embark in it, without incurring a forfeiture of his veil'1 and cargoe : though it has recently been adjudged in
 
 England,
 
 that an
 
 American
 
 citizen .is entitled tó carry on the trade, b-y virtue of exprefs ftipulations in the treaty of anityand commerce between the
 
 United States
 
 and
 
 Great Britain.
 
 Hence, it was deemed neceflary, to enter upon another operation; the bill of fale was fent back ; and a
 
 hew
 
 eontra<R was formed between the parties upon tliefe principles: that the Plaintiff ihould remain the owner of the ihip, and as fuch retain the regifter, and make the infurance ; that ibe ihould, noweyer, be delivered to Mr.
 
 Dunkerfon,
 
 or his agents, arid that M fits.
 
 Willings IV Francis
 
 ihould procure, a freight for her on Mr.
 
 Dunkerfon’s
 
 account ; that the Plaintiff ihould empower Mr.
 
 Siirrow
 
 (a g'entleman who failed as a paiTenger jn her), to aflign, and transfer the ihip to Mr.
 
 Dunkerfon
 
 in
 
 England,
 
 on the lit of
 
 September
 
 enfuing, at which time Mr.
 
 Dunkerfon
 
 would be du.lv naturalized as an
 
 American
 
 Citizen ;
 
 *493
 
 and that the confideralion money íhould be fecured .by the notes of Meffrs.
 
 Willing is?
 
 Francis, payable, at all evetns, in certain inftalments. The effential point in this agreement was, obviouily, therefore, that the property fhould remain the Plaintiff’s, until the day fixed for the transfer in Europe; and, accordingly, the Regifter was continued in his name, and the p.refent infurance was effedted by him, as owner of the ihip.
 

 On thefe fadts fome important queftions arife. It is true, that the firft bill of fale was cancelled and done away; but the Defendant urges, that there were many fubfcquent adts of the parties, which ihew an abfolute change of property, under the fecond agreement; particularly, as the ihip was delivered to Mr. Dunkerfon, to be loaded for his ufe ; and the confideration money was payable at all events. A fair and legal contradi ihould, however, be carried into effedl:, according to its true intention ; and, whether the form of proceeding is, or is not, ftridtly corredt, there can be no doubt, that the true intention of this contradi was, to continue the property of the ihip in the Plaintiff for a fpecified period. If an immediate fale had been contemplated, the contradt, payment of the price, and delivery of the' Clip, would, unquestionably, be fufficient to diveft the property of the original owner, and veil it in the pur-chafor ; but if the parties could legally contradt, not for a pre-fent fale arid transfer, but for a fale and transfer ata future day, under a Power of Attorney, to be given for the purpofe; and if fuch is the nature of the prefent contradt, then the payment and delivery muft have relation to the terms and conditions on which they were made ; and of which the moft important was, that the Plaintiff íhor^lá continue the owner of the ihip, until the ift of
 
 September.
 

 The only objedts for enquiry, then, are ift. Whether the contradt was a fair one; and 2d. Whether it was a lawful one. .That it was a fair contradt has not been denied : Rut, it has been contended, to b,e an illegal contradt, violating the pofitivc provifions of an Adt of Gongrefs; as well as militating againft the duties .of a neutral nation, by affording a ready cover to the property of a belligerent power. The Regiftering ridtis ex-prefled in ‘fuch ftrong terms, that when it was firft read, we thought it dccifive upon the cafe ; for, it feemed generally to require, an oath, ic that there is no fubjedt, or citizen, of any “ foreign prince or ftate, diredtly, or indiredtly, by way of “ truft, confidence, or otherwife, interefted in the ihip, or vef- “ fel, or in the profits, or ifiues thereof.” I
 
 Vol.
 
 p• t34-
 
 /•
 
 4.
 
 Swift’s Edit.
 
 But, upon examining the Adt, we found, that this oath was only exadted, “ where an owner, refides in a K foiehm country, in the capacity of a conful of the
 
 United
 
 
 *494
 
 “
 
 Stales,
 
 or as an agent for, and a partner in, a houfe, orco-? “ partnerihip, confifting of citizens of the
 
 United State's Ibid.
 
 The terms of the provifion do not, therefore, embrace the prefent cafe, the cafe of an
 
 American
 
 citizen, refiding and regiftering his v.eflel in an
 
 American
 
 port; and its policy'may reafonably be .confined to
 
 Americans
 
 refident abroad, who are fo much expoféd.to the temptation of covering belligerent property, and fo little expofed to the dangers of detection
 
 *
 
 .
 

 Confidering all the circumftances, therefore, it does not appear to us, that there was an a£lual fale; and, if a future fale was only intended, we have no right to contradiñ, or modify, ■the contradi of the parties. But while this opinion, is expref-fed, it cannot be denied, that there are ftrong fails in fupport of the defence.
 
 Mr. Dunkerfon
 
 would have been the abfólute, unqualified, owner of the ihip, under the firft bill of fale; and even under the fubfequent agreement, he obtained poflefiion of her, loaded her, received the freight, and exercifed other ails of fuperintendance and ownerfhip. Though the Plaintiff effetft-cd the infurance, he was reimburfed the premium; and though he ifiued the failing orders to the captain, it is faid to have been done at the inftance of
 
 Mr. Dunkerfon..
 
 Dn the weight ofthefe fails, therefore, the jury muft decide: And if, after all, you fhoukl think, that there was an ailual and immediate fale to
 
 Mr. Dunkerfon,
 
 an alien, there muft be a verditft for the Defendant, notwithflanding the regifter and oath of the Plaintiff; which are
 
 prima facie,
 
 but not conclufive, evidence pf th«
 
 Amer¡¿án propsny of
 
 the ihip.
 

 But'another queftion has been qgitated in the caufe, which, is entitled to confideration. It was infifted, that an underwriter is difeharged from the obligations of the policy; if any thinz mateiial to the rifque is not difclofed to him at the time, of effecting the infurance. Though there was an attempt to .encounter this pofition, by evidence of the general notoriety of
 
 *495
 
 trie contrail between the Plaintiff and
 
 Mr. Dunkerfon
 
 ;ryet that circumflance is too vague to be conflrued into notice either to the Defendant,' or the Infürance Broker. Notice, however, is a matter of fail; but whether notice is neceffary, is partly a matter of fail, and partly a matter of law. Now, the Plaintiff warranted the ihip to be all
 
 American
 
 bottom, which of itfelf fuperfeded, in our opinion, the necefiity of making any communication on the fubjedt of the property. But, flill, if, in the opinion of the Jury, a knowledge of the ciccumflances that were fuppreifed, would have induced the infurer to demand a higher premium, or to refufe altogether to underwrite, it will be fufficient, on commercial principles, to invalidate the policy. A refpeclable witnefs (an underwriter) has declared, however, that a difclofure of thefe circumftances would not fcave prevented his underwriting the rifque at the fame premium;
 

 If, upon the whole, the contradi was a fair one, with a view to a lawful purpofe, a voyage to India; and not with a view to aid one Belligerent power at the expence of another, by a fradulent cover of property (which would certainly be fatal to the Plaintiff’s demand) we think that the fhip remained an
 
 American
 
 bottom, at the time of the capture and condemnation; and, therefore, that the verdidl ihould be. in favor of the Plaintiff.
 

 But if there .‘was an adlual and immediate fale of the ihip to
 
 Mr.
 
 Dunkerfon; or if there was any concealment which ought to invalidate the policy; we think the verdict ihould be in faVor of the Defendant.
 

 Yerdidt for the .Plaintiff.
 

 BitECKBILt.
 

 *
 

 The Judge did not exprefsly refer in his charge to another ftftion of? the Regiftering Aft, which was cited by the Defendant’s Counfei, as pruof- that the veflel was forfeited, if the fale was an abl'olute one. The words of the feftion are : “ That if any ihip or vclfei, heretofore regif- “ rered, or which ihall hereafter be regiftered, as a ihip or-velTel-of the • t;
 
 United- States,
 
 ihall be fold or tiansferred, in whole or in part, by way
 
 “
 
 of truft, confidence, or otherwife, to a fubjedt, or citizen, of any foreign Prince, or State, ahd i'uch fale or transfer ihall not be made known,
 
 in i: manner herein before direifed,
 
 fuch ill ip or veiTel, together with her tackle, “ apparel, and furniture, ihall be forfeited.” 2
 
 Pol. ¡>.
 
 148 /. 16..
 
 Swift's F.dil..
 
 X prefume, the Judge, having adopted the reafoning'of the Plain-tilPs Counfel, that there-was no adtual and immediate'fale and transfer of the
 
 Mount Yemen,
 
 or, in other words, that the contradi was executory, not executed, did not think the fe.ftiim' applicable to the prefent cafe. For the. manner of-making knowa-the fsic and tiansfer here alluded to,
 
 See pa,
 
 7.
 
 f.
 
 137.