WILLIAM LEITCH, Respondent, v. THE ATLANTIC MUTUAL INSURANCE COMPANY, Appellant.

In policies of marine insurance upon cargo, a condition is implied that the goods insured will be stowed in the usual and customary place for the carriage of goods of that description, and any breach of this implied warranty by which the risk is varied and the perils insured against increased, vitiates the policy.

In actions upon marine insurance the testimony of underwriters as experts is admissible upon the question of materiality of circumstances affect-

ing the risk, and where evidence of this kind is necessary for the reason that the fact is not sufficiently obvious to enable the court to decide it without such aid, the testimony is to be treated the same as that in reference to any other fact, and if there is no conflict the fact of materiality or immateriality must be held as the witnesses testify.

In an action upon a policy of marine insurance covering a quantity of gold coin it appeared that the coin was not stowed in or under the captain's cabin, the usual places for stowing freight of that description, but in the "run," under the cargo and ballast. This was without the knowledge of defendant. The evidence was undisputed that it was thus exposed to a different risk and the peril in case of disaster at sea greatly increased. The vessel sprang a leak at sea and was abandoned. Underwriters, called as experts, all testified that the unusual method of stowage was a fact material to the risk. *Held,* that the court erred in submitting the question of materiality to the jury; that the risk was not that insured against, and the policy never attached.

(Argued April 17, 1876; decided April 28, 1876.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was upon two policies of marine insurance, one for cargo, mahogany and fustic, the other upon specie specified as "Mexican doubloons," alleged to have been taken on board the brig Paquet de Tampico on a voyage from Laguna *via* Minatitlan to New York.

The specie, as plaintiff's evidence tended to show, was taken on board secretly at Laguna and was placed in the "run" of the vessel under the ballast. The vessel sailed from Laguna to Minatitlan. There the outward cargo was discharged, the gold recounted, placed back under the ballast, and the vessel loaded with mahogany and fustic. The vessel sailed from Minatitlan, encountered a gale, sprang a leak, filled with water, and was abandoned. A number of master mariners, called by defendant, testified that the stowage of specie in the manner stated was unusual and improper; that the usual places of stowage were in or under the captain's cabin. Upon this point the evidence was undisputed. Several underwriters, called as experts by defendant, testified that the stowage

in the manner stated did increase the risk, and the fact was material to be known by the underwriter, and would affect his judgment in accepting the risk, and also the rate of premium.

As to the count of complaint upon the policy covering the gold coin, defendant's counsel moved to dismiss the complaint upon the grounds, among others, that the goods pretended to have been shipped on board the said vessel were, upon the evidence, not shipped in the usual, proper and lawful manner, nor "laden on board," within the meaning of the policies, at the alleged ports of shipment, and that this fact was known to the plaintiff and concealed from the defendant. That the lading of said vessel, upon the evidence, was fraudulent, illegal and improper, and that this fact was concealed from the defendant. That, upon the evidence, facts material to the risk were concealed from the defendant, whereby the policies are avoided. That, upon the evidence, the stowage of specie (if any was shipped) was in an unusual manner and place, whereby the risk (if any such gold was shipped) was different from that assumed by the defendant in the policy described in the first count, and therefore said policy never attached. That the stowage of the specie (if any was shipped) was shown by the evidence to have been in an unusual manner and place, whereby the risk was materially increased, and these facts were concealed from the defendant, and therefore the policy never attached.

The court denied the motion, and said counsel duly excepted.

Defendant's counsel requested the court to charge among other things as follows: "That the jury are bound to find upon the evidence that stowage under the ballast and cargo is a fact material to the risk. That if the jury find that the loss of the gold (if any was shipped) was occasioned by its being stowed under the ballast and cargo, and that it could have been saved if it had been in an accessible place, then they will find for defendant on first count. That if the jury find that there was any specie on board, if they also find that the same was stowed and carried in an unusual place on the vessel, that

they will find a verdict for the defendant on the first count. That the jury are bound to find that the risks to which it was exposed (if shipped at all) in this unusual place were different in kind or degree from those to which it would have been exposed if stowed in the usual place for the stowage of specie."

The court refused so to charge and defendant's counsel duly excepted.

Further facts appear in the opinion.

*Samuel Hand* for the appellant. The mere fact of unusual stowage by the insured of goods insured in a marine policy avoids the policy if not known and assented to by the insurer. (*Mer. Ins. Co.* v. *Algeo*, 32 Penn., 330; *Blackett* v. *Assurance Co.*, 2 C. & J., 250; *Atkinson* v. *Gt. W. Co.*, 4 Daly, 27; *Da Costa* v. *Edmunds*, 4 Campb., 142; *Copper Co.* v. *Mer. Ins. Co*, 22 Pick., 108; *The Delaware*, 14 Wal., 602; Marshall on Ins., 3 Dal., 467, 491; 10 B. & C., 527.) Testimony of underwriters, as experts, upon the question of materiality of circumstances to the risk, is admissible where the materiality is not so obvious that the court is bound so to declare it without evidence. (3 Kent Com. [12th ed.], 285, note *e*; *Richards* v. *Murdock*, 10 B. & C., 527; Duer on Ins., 683, note; 1 Pet., 188; *Hartman* v. *Keystone Ins. Co.*, 21 Penn., 478; *Hobby* v. *Dana*, 17 Barb., 111; *Appleby* v. *Ins. Co.*, 54 N. Y., 253.)

*W. J. A. Fuller* and *E. L. Fancher* for the respondent. The question whether the gold was stowed in a proper place was a question of fact. (*Chase* v. *Eagle Ins. Co.*, 5 Pick., 53; Sherman's Dig. Mar. Ins., 83; *Ocean Ins. Co.* v. *Francis*, 2 Wend., 64.) Defendant was bound to take notice of the condition of affairs in Mexico, and is assumed in law to have made its contract with reference thereto. (*Carter* v. *Boehm*, 3 Burr., 1905; 1 W. Black., 593; *Boyd* v. *Dubois*, 3 Campb., 133; *Neilson* v. *La. Ins. Co.*, 5 Mart. [La., N. S.], 289; 1 Phil. on Ins. [5th ed.], 79, 304, 306–308, 316–337; *Bell* v.

*Bell*, 2 Campb., 479; *Md. and Ph. Ins. Co.* v. *Bathurst*, 5 G. & J. [Md.], 159; *Bowne* v. *Shaw*, 1 Cai., 489; *Cal. Ins. Co.* v. *Cattell*, 12 Wheat., 383; *Noble* v. *Kenoway*, 1 Dougl., 501; *Köhne* v. *Ins. Co. of N. Am.*, 1 Wash., 93; *Marshall* v. *Un. Ins. Co.*, 2 id., 357; *Buck* v. *Ches. Ins. Co.*, 1 Pet.. 151; *Kingston* v. *Knibbs*, 1 Campb., 508, *n*; *Vallance* v. *Dewar*, id., 503; *Da Costa* v. *Edmunds*, 4 id., 142; *Mobile Mar. Ins. Co.* v. *McMillan*, 27 Ala. [N. S.], 77; *Planchi* v. *Fletcher*, 1 Dougl., 251; *Delouguemere* v. *N. Y. F. Ins. Co.*, 10 J. R., 120; *Pelly* v. *Royal Ex. Ass. Co.*, 1 Burr., 341, 350; *Blackette* v. *Royal Ex. Ass. Co.*, 2 C. & J., 249; Arnould Mar. Ins. [5th ed.], 236, 264; 3 Dougl., 419; 4 T. R., 206; 1 Park., 105; 3 Burr., 1707.) The materiality of a representation or concealment is a question for the jury. (*Littledale* v *Dixon*, 4 B. & P., 151; *Rawlins* v. *Desborough*, 2 M. & R., 328; *Westbury* v. *Aberdeen*, 2 M. & W., 267; *McDowell* v. *Fraser*, 4 Dougl., 260; *Shirley* v. *Wilkinson*, 1 id., 306 *n*; *Willis* v. *Glover*, 4 B. & P., 14; *Mackintosh* v. *Marshall*, 11 M. & W., 116; 121; Duer on Mar. Ins. [1844], 78; 196, note 22; *Bridges* v. *Hunter*, 1 M. & S., 15; *Elton* v. *Larkins*, 8 Bing., 198; Arn. on Mar. Ins., 1074; *Livingston* v. *Delafield*, 1 J. R., 522; *Walden* v. *N. Y. F. Ins. Co.*, 12 id., 128, 513; *Tyler* v. *Ætna Ins. Co.*, 12 Wend, 507; *Houghton* v. *Mfg. Mut. Ins. Co.*, 8 Metc., 114; *Col. Ins. Co.* v. *Lawrence*, 10 Pet., 507; *Lindsey* v. *Un. Ins. Co.*, 3 R. I., 157; *Wash. Ins. Co.* v. *Mer. Ins. Co.*, 5 Ohio St., 450; *Percival* v. *Me. Ins. Co.*, 33 Me., 242; *Hacgeniu* v. *Rayley*, 6 Taunt., 186; *Sexton* v. *Mont. Ins. Co.*, 9 Barb., 191; *Masters* v. *Mad. Co. Ins. Co.*, 11 id., 624; 2 Phil. on Ins., 570; 6 Cranch, 338.) Whether a witness offered as an expert has the necessary qualifications is to be decided by the court at the trial. (*Jones* v. *Tucker*, 41 N. H., 546; Arn. Mar. Ins. [1872], 540; 3 Kent's Com., 284, note; *McLanahan* v. *Un. Ins. Co.*, 1 Pet., 188; 2 Duer, 786; 2 Duer on Ins., 783–786.) The fact of a concealment or misrepresentation and the materiality of a fact as to representation and concealment is for the jury. (*Sexton* v. *Mont. Ins. Co.*, 9 Barb., 194; *Masters* v.

*Mad. Co. Ins. Co.*, 11 id., 624; 1 J. R., 523; 3 id., 49; *Cumb. Val. Co.* v. *Mitchell*, 48 Penn. St., 374; *Frank. Ins. Co.* v. *Coates*, 14 Md., 285; 2 M. & R., 329; *Flinn* v. *Headlam*, 9 B. & C., 693; 2 Phil. on Ins., 570; 1 B. & P. N. R., 151; 2 M. & R., 32; *Westbury* v. *Aberdeen*, 2 M. & W., 267.)

ALLEN, J. The question of most prominence, as it is the most important, is as to the validity of the policy upon the gold and the rulings of the learned judge at the trial in respect to it. There is no conflict of evidence or substantial dispute, as to the facts upon which its validity is challenged by the defendant. The claim is that the specie was not stored on board the vessel in the usual and customary place, for the carriage of freight of that description, but that it was placed in an unusual part of the vessel, by which the peril was greatly increased and the risk essentially varied from that assumed by the underwriter. The evidence of the shipmasters given upon the trial was uniform that the usual place for the carriage of coin or specie of any kind was either in some proper place in the cabin or in that part of the run of the vessel immediately under the cabin and accessible from it by an opening in the floor with a trap properly fitted, so that it might be at all times under the immediate watch and care of the captain and only accessible from the cabin. The masters of vessels who were examined as witnesses upon this subject had been engaged in trade to Mexican and South American ports as well as to other ports and places, and all agreed that the usual and proper place for the safe-keeping of coin carried as freight was either in or under the cabin as stated. It was proved by one or more of the witnesses, and not disputed, that the only exception to this usage is when specie is taken out of the country clandestinely in violation of the revenue laws and to evade the payment of export duties, when it is sometimes concealed among the cargo or in other parts of the vessel, but never under the cargo. In such cases, as soon as the vessel is at sea and the pilot has left the ship, the coin is invariably taken from its temporary place of concealment

and deposited in the usual place. The same witnesses, and the only witnesses upon the subject who were experienced as navigators and masters of vessels, agreed that a deposit of coin under the ballast or under the cargo was unusual, and increased the hazards and risk of loss to which it was exposed. In case of disaster it was less accessible and could not be saved in whole or in part as it might under ordinary circumstances and as usually stored. This fact is so palpable upon a mere statement of the different modes and places of stowage that it needed not to be proved by experts. It was not denied that while under the freight, especially such as that laden on board the vessel in this instance, it was safer from barratry or theft than when stowed in the usual place; but even in such case the risk of theft was greater when the vessel was unladen, and during that process, from its liability to be taken by stevedores and others who would have access to it. The claim of the plaintiff is, that the gold was lost not from the perils said to be diminished by the stowage resorted to but by that which was confessedly increased. The gold in the present instance was suffered to remain under the ballast from the time it was placed there at Laguna until the vessel sailed and during the voyage from that port to Minatitlan and until the cargo of mahogany was laden on board at the latter port. During all that time it is self-evident that it was exposed to equal if not greater peril from barratry and theft than if stowed in the usual place. There is no evidence except that of the plaintiff that the gold was seen on board the vessel after it was first laden at Laguna. Whether there was any necessity for the stowage of the gold in the hold of the vessel outside of the cabin, while the vessel remained upon the coast and at the ports of Laguna and Minatitlan which would justify a deviation from the usual course of lading and of which the underwriters might be presumed or were bound to have known and thereby to have assumed the varied risk, cannot be determined upon the present record. These questions were not tried or decided by the trial court. The facts proved by these witnesses, and

which are not controverted by any witness upon the trial, clearly and conclusively establish that the actual risk upon the gold was not the same as it would have been, stowed in the usual place, and that the risk of loss in case of disaster at sea, the peril by which it is claimed the gold was lost, was increased.

In addition to this evidence several underwriters were called, as experts, and they were unanimous in the opinion that the carriage of specie under the ballast and cargo did increase the risk, and that the fact that it was so carried was material to be known by an underwriter, and would affect his judgment in accepting the risk ; and, if accepted, the rate of premium.  But a single underwriter was called by the plaintiff, and his evidence did not detract from the force of, or conflict with, that given in behalf of the defendant.  He testified that a stowage under the cargo would (in his own language), " of course," in some respects increase the risk, so far as the perils of the sea were concerned, and only diminish it as against barratry or theft on the part of the mariners.  He also stated that when so stowed, the risk would be different in character and different in kind from what it would be if the gold were stowed in the cabin or in the run immediately under the cabin.

The plaintiff, himself a witness upon the trial, stated that he had frequently shipped specie and carried it under the cargo and the timbers, in oat sacks, in the cook's coppers, and almost everywhere in the vessel where he deemed it most prudent, but he did not state under what circumstances he had so carried it, or that it was usual so to do, or that when so carried it was insured.  Under objection that he had not shown himself competent to testify as an expert, he was permitted to testify that, in his opinion, the risk would not be any greater for the safety of the specie, whether stowed under the cargo or in any other place on the vessel, and that it would be safer under the cargo against barratry and theft.  His testimony was not in conflict with, but rather in corroboration of, the testimony of other witnesses, except in the statement that the gold was

equally safe in any part of the vessel. It is well settled that the testimony of experts, and especially of underwriters, as such, is admissible upon the question of materiality of circumstances affecting the risk. (*McLanahan* v. *The Universal Ins. Co.*, 1 Peters, 170 ; 3 Kent's Com., 284.) When evidence of this character is necessary, for the reason that the fact is not sufficiently obvious to enable the court to decide it without aid, the testimony is to be treated as testimony of credible witnesses upon any other fact, and if there is no conflict, the fact of materiality or immateriality must be held as all the witnesses testify. If there is a difference of opinion it then becomes a question of fact for the jury. In every contract of marine insurance there are certain implied stipulations and conditions which are of the same obligatory force as if expressed in the policy, and make a part of the contract, and are distinguishable from mere representations. (Arnould on Ins. [4th ed.], 589.)

One of the conditions implied by law in case of an insurance upon cargo, is that it shall be stowed in a safe and proper manner, and in the usual and customary place for the carriage of goods of the description insured ; and any breach of this warranty by which the risk is varied and the perils insured against increased, vitiates the policy. A policy upon merchandise is vitiated by a breach of the implied warranty that the conveying ship is seaworthy, although the shipper of the goods is innocent and has no interest in the ship. (Arnould on Ins., 591.) The insurers, assuming risks which the insured is unwilling to bear, can only be held to those risks for which they have voluntarily and knowingly undertaken, and the insured has no right to substitute any others in the place of those assumed. (2 Pars. on Ins., 2 ; *Hartley* v. *Buggin*, 3 Doug., 39 ; *Maryland Ins. Co.* v. *Le Roy*, 7 Cranch, 26.) In *Blackett* v. *The Royal Exchange Assurance Company* (2 C. & J., 244) Lord LYNDHURST, C. B., says : " On an insurance upon goods the underwriter is entitled, in general, to expect that they shall be carried in that part of the ship usually appropriated to the stowage of goods, not in a more dangerous part ; " and adds :

" If he were to be made answerable for extraordinary peril he would be answerable for a peril he had not contemplated and for which he had not received an adequate compensation." To this principle may be traced the rule which excludes deck cargoes from the protection of an ordinary policy of insurance (1 Parsons on Marine Ins., 529.) In *Brooks* v. *The Oriental Insurance Company* (7 Pick., 259) the underwriter was held not to be liable upon a valued policy upon a ship, for a hawser lost overboard, which was stowed in the boat on deck instead of in the hold, with the cables, on the passage, the court saying that it was a matter of common information that it should have been stowed in the hold. Here we have the uncontradicted evidence of an established usage as to the proper place for the stowage of gold, and the patent and obvious fact that the usual place is the safer place for carrying it. It is only where there is doubt as to the materiality of a representation or of any deviation or change of risk that it falls exclusively within the province of a jury.

A nonsuit was sustained, by the court *in banc*, in the *Taunton Copper Company* v. *The Merchants' Insurance Company* (22 Pick., 108), upon the ground that the merchandise, which was copper in pigs, had been stowed upon deck instead of being put under deck ; and this notwithstanding a general usage for forty years to carry goods, not liable to be injured by dampness, on deck, was proved. The court were of the opinion that the usage stopped *in limine*, and that the insured should have proved in addition that it was usual for underwriters to pay for goods lost when carried on deck. The plaintiff's claim and proof in this case is equally defective. There is no pretence that any underwriter has ever paid for coin lost when stowed in this way and insured by a policy in the ordinary form. The question in *Rickards* v. *Murdock* (10 B. & C., 527) was as to the materiality of a direction, from the insured to the broker, to wait thirty days after the receipt of the letter giving the directions before effecting the insurance. It was held that evidence of the underwriter's opinion was properly received, and that

even without it the jury would have been bound to find that that part of the letter not communicated to the underwriters was material, and that consequently the policy was void. *Da Costa* v. *Edmunds* (4 Camp., 142) was an action upon a policy of insurance on forty carboys of vitriol, and the plaintiff had a verdict upon proof of usage to carry vitriol on the deck, of which usage the underwriters were bound to take notice. Lord ELLENBOROUGH instructed the jury that the underwriters were not liable if the goods were carried on deck without such usage, or if they were not stowed there in a skillful and proper manner. The only questions left to the jury were as to the usage, and whether, if the usage was established, the carboys were properly stowed. The question of materiality was not submitted. (See also *Merchant's Ins. Co.* v. *Alger*, 32 Penn. St., 330 ; Marshall on Ins., 348, 349 ; *Milward* v. *Hibbert*, 3 A. & E. [N. S., Q. B.], 120 ; *The Delaware*, 14 Wall, 579.) The Commission of Appeals, in *Appleby* v. *The Astor Fire Insurance Company* (54 N. Y., 253), reversed a judgment in an action upon a policy of fire insurance for error of the judge, at Circuit, in refusing to direct a verdict for defendant upon the ground that the risk had been materially varied and increased by the introduction to the building of the business of finishing chairs, which had been manufactured in the rough elsewhere. The court held that it was not a case to be sent to a jury, but that the defendant was clearly entitled to a verdict and judgment. Upon a reconsideration of the case, upon a motion for a reargument, the court say : "As an ordinary rule it may be safely assumed that, upon an undisputed state of facts, the court in which an action is pending may render the judgment which the law requires, without the aid or advice of a jury, and that such action by the court does not violate any of the maxims of the law."

The fact being undisputed that the gold for which this action is brought was not stowed in the usual place, but in another part of the vessel, where it was exposed to a different risk (and to increased hazard, save only against barratry and theft), from that to which it would have been exposed had it

been stowed where the defendant had a right to assume it would be stowed, it follows, as a very plain proposition, that the stowage under the ballast and cargo was a fact material to the risk, and the judge should have so charged the jury as requested. The judge should also have charged, as he was requested to do, almost in the very language and according to the evidence of the only underwriter examined as an expert in behalf of the plaintiff, that the risks to which the gold was exposed in this unusual place were different in kind or degree from those to which it would have been exposed if stowed in the usual place for the stowage of specie. If these questions depend upon the testimony of witnesses, the evidence was conclusive, and a verdict in disregard of it should have been set aside; and the defendant was therefore entitled to a direction for a verdict in accordance with it. If the questions were for the court and jury, irrespective of the testimony of experts as to the materiality of the change of place for the stowage, then, as a matter of law, the defendant was entitled to a verdict upon this policy, upon the evidence and upon the direction of the judge and the finding of the jury, that the stowage of specie under the ballast and cargo was stowage in an unusual manner and place, and that the fact of such stowage was concealed from the defendant. There was no room or place for holding, either by the court or jury, that such unusual stowage was a fact not material to the risk. Its materiality is too obvious to be submitted to a jury, and it was error to permit a verdict to pass for the plaintiff upon the ground of the immateriality of this fact, under the circumstances of this case. The risk was not the risk assumed by the defendant, and the policy never attached. It is sufficient that the risk resulting in loss was not the same as that assumed by the defendant. The underwriter had the right to elect whether he would assume the actual risk, and to fix the premium, but it was also an increased risk. If the facts can be varied upon a retrial, the plaintiff may, upon some ground other than that already considered, recover; but upon the

exceptions taken at the trial, defendant, upon this branch of the case, is entitled to a reversal of the judgment.

These views render it unnecessary to consider many of the exceptions taken by the defendant upon the trial, some of which present questions of interest, but as they mostly relate to the shipment of gold they become unimportant if the gold was not covered by the policy. Among the questions thus eliminated from the case, as presented, is the alleged illicit character of the voyage and its effect upon the contract. Many of the questions of evidence are also unimportant, by reason of the effect given by us to the undisputed evidence and the clear change in the risk by the irregular stowage of the gold. Whether the policies were procured by false representations in respect to the character, credit, position and history of the plaintiff, was properly submitted to the jury. The evidence that the policies were issued in reliance upon such representations was not so clear and conclusive as to authorize a withdrawal of the question from the jury. The testimony of the vice-president of the defendant is explicit that he should have declined the risk upon the gold had he supposed that it was to be stowed under the ballast or the cargo; but when he comes to speak upon the effect and influence of the representations in respect to the plaintiff he is not as explicit, but he says he should have depended a good deal upon the standing of the house offering the risks, and leaves it somewhat in doubt as to the extent his action was influenced, in taking the risks, by the statements made to him in respect to the personal character and standing of the plaintiff. Again, there was evidence touching the actual character, history and standing of the plaintiff and the truth of the statements made to the defendant, which made it eminently proper that the whole question upon this branch of the defence should be submitted to the jury.

Several exceptions were taken to the exclusion and admission of evidence upon minor points, which, as they may not be repeated upon another trial, we do not deem it important to consider. Exceptions were also taken to several of the

refusals of requests, by the defendant; to charge the jury, none of which we deem it important to refer to.

For the errors suggested, and without considering the other questions, which will not necessarily arise upon another trial, the judgment must be reversed, and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.