Douglas F. Cox, in His Own Behalf and in Behalf of all Others Similarly Situated, Plaintiff, v. C. G. Blake Company, Swift & Company and Frigorifico Montevideo Sociedad Anonima, Defendant.

(Supreme Court, New York Special Term, May, 1917.)

Insurance (marine) — contents of certificate of — carriers — pleading — contracts — evidence.

> Where the complaint in an action to annul or reform a certificate of insurance issued on the Lloyds plan by underwriters, of which plaintiff was one, alleges in the same paragraph that the intention and the understanding of the underwriters and the insured were that the subject matter of the insurance was "coal, including freight," and not "coal" as erroneously written in the certificate of insurance, and also that the insurers "were not informed as to the exact value of said coal sought to be insured, but proceeded upon the implied representation and assurance that the insured was the owner of the coal and that the amount of freight sought to be insured had been or would be actually paid prior to the sailing of the vessel and would be at the risk of the owner of said cargo during the said voyage," and it is expressly alleged that the subject matter of the risk arose "through clerical errors and mutual mistakes" and upon the proofs the court must find that when the certificate was issued the underwriters were justified in assuming and believing, in view of the failure to disclose the actual facts on the part or in behalf of the insured, that the latter had paid or guaranteed the payment of the freight, plaintiff is entitled to have the certificate canceled and set aside.

> Expert testimony of underwriters of marine insurance as bearing upon the materiality of the omission to disclose to the insurers that the insured had no risk in the freight was admissible.

Action to annul or reform a certificate of insurance.

Barry, Wainwright & Symmers, for plaintiff.

Lord, Day & Lord, for defendant.

GREENBAUM, J.   The plaintiff is one of a hundred underwriters on the Lloyds plan, duly organized under the laws of the state of New York, and doing business under the name "Subscribers at United States Lloyds" for the purpose of carrying on the business of marine insurance. The firm of Higgins & Cox were the attorneys in fact for the underwriters. On October 14, 1915, a certificate of insurance was issued in behalf of the United States Lloyds by their attorneys, insuring by its terms a cargo of coal valued at $38,873 to be shipped on the steamship Genesee from Hampton Roads to Montevideo, Uruguay, the loss to be payable to the order of defendant C. G. Blake Company, a corporation engaged in the business of mining and selling coal, which duly transferred the certificate to Swift & Company, the purchaser of the coal. On or about the 5th day of November, 1915, the steamer Genesee with its cargo of coal, while en route to Montevideo, was captured or seized by a British warship and taken to the port of Castries, St. Lucia, British West Indies, where it was detained and proceedings instituted in the prize court for the purpose of condemning the vessel and cargo as lawful prize. As a result of the proceedings the British authorities released the cargo and for some reason held the vessel, whether by purchase or otherwise does not appear. Swift & Company obtained possession and control of the coal on or about January 27, 1916, but, being unable to forward it to Montevideo, they subsequently sold the coal at Castries at twenty shillings a ton, the best price obtainable therefor. The net proceeds of the sale, after deducting all expenses of every nature, aggregated about $18,048.33, or approximately $10,618.88 more than the original cost of the coal, which was $7,431.45. This action is brought for the purpose of annulling the cer-

tificate of insurance or reforming it by substituting therein the words " coal, including freight," for the word " coal." Swift & Company, an Illinois corporation, and Frigorifico Montevideo Sociedad Anonima, a corporation organized under the Republic of Uruguay, are also defendants. The facts upon which the rights of the parties depend are practically undisputed. It appears that the Blake Company had sold the cargo of coal to Swift & Company pursuant to the terms of a letter from Swift & Company, confirmed in writing by Blake & Company, which, among other provisions, contained the following: " Price of the coal to be $10.20 per gross ton of 2,240 lbs., cost, insurance and freight, delivered alongside of dock or lighters of the Frigorifico Montevideo Sociedad Anonima, Montevideo, Uruguay, S. A." and " insurance policy required above is to be satisfactory to us (referring to Swift & Company) and is to be made out in our favor for the amount of the cargo on the delivered value; in other words, the insurance policy is to be in our favor for the amount of the delivered value of the cargo at the c. i. f. price we contracted to buy the coal from you." The letter of confirmation contains the following: " We note the clause regarding insurance policy, from which it would seem that we are compelled to insure this cargo for the full value at the delivered price of $10.20 regardless of the amount of freight advanced." On October 9, 1915, one Steinkamp, the New York manager of the C. G. Blake Company, communicated with an insurance brokerage firm doing business under the name of Lethbridge & Cornwell, stating that the Blake Company was about to charter the American steamship Genesee and desired insurance rates, marine and war risk, for a cargo of coal from Hampton Roads, Virginia, to Montevideo, Uruguay. Steinkamp testified that he told Lethbridge

that the insurance was desired "for delivered value at c. i. f. price," while Lethbridge testified that Steinkamp said that he had arranged for the charter of this vessel and that he wanted to take out insurance for the cargo of coal, including freight, and that its destination was Montevideo. The initials c. i. f. are understood in marine insurance to mean cost of the merchandise, plus insurance and freight. The complaint alleges in the same paragraph that the intention and the understanding of the underwriters and the insured were that the subject matter of the insurance was "coal, including freight," and not "coal," as erroneously written in the certificate of insurance, and also that the insurers "were not informed as to the exact value of the said coal sought to be insured, nor as to the amount of freight to be insured, but proceeded upon the implied representation and assurance that the said C. G. Blake Company was the owner of the coal and that the amount of freight sought to be insured had been or would be actually paid prior to the sailing of the vessel and would be at the risk of the owner of said cargo during the said voyage." There is no allegation or suggestion of fraud or bad faith on the part of the insured but, on the contrary, it is expressly alleged that the subject matter of the risk arose "through clerical errors and mutual mistakes." The prayer of the complaint asks the court to determine, first, whether any contract of insurance was entered into between the parties, "and if so, that it was upon and subject to the conditions hereinbefore set forth;" secondly, that the alleged certificate of insurance "may be canceled or be reformed so as to express the contract entered into between the plaintiff and defendant C. G. Blake Company upon and subject to such conditions," and, thirdly, "that the court determine what are the respective rights of the respective defendants in and to said cargo of coal and

in, to and under any contract of insurance aforesaid."
It is difficult to understand in what respect the posi-
tion of the plaintiff would be bettered had the subject
matter of the insurance been described "coal, includ-
ing freight," instead of "coal," since the evidence
convincingly establishes that each of these descrip-
tions had reference to the value of the coal c. i. f. at
Montevideo, the place of delivery, which meant the
original cost of the coal, the insurance and freight.
There can be no doubt that the insurers knew that
they were not insuring the coal at its value at Hamp-
ton Roads, but for a value which included the cost of
freight to the port of delivery, a conclusion fortified
by the admission of plaintiff's agent who issued the
certificate of insurance that he described the interest
insured as "coal" because he had "concluded that
the freight had been prepaid and hence had become a
part of the value of the coal." Besides, if the freight
was intended to be an independent item of insurance,
it is reasonable to assume that separate values would
have been stated for the "coal" and the "freight."
We thus find no substantial difference between the
parties that the interest to be considered was "coal"
at a value at the place of delivery. It only remains to
determine whether the contract of insurance may be
avoided because of the mistaken belief on the part of
the insurers when they issued the certificate that the
freight was at the risk of the insured. The record is
silent of any mention or reference by any one during
the course of the negotiations for the insurance as to
whether the charterer had prepaid the freight or a
portion thereof or had guaranteed its payment or
that it was not collectible unless the coal was safely
carried to Montevideo. As matter of fact neither the
charterers nor Swift & Company had paid the freight,
nor had either of these parties guaranteed its pay-
ment. By the failure to deliver the cargo to Monte-

video there was no obligation on the part of the charterers or Swift & Company to pay the freight. There can be no doubt that the underwriters did not know when they issued the certificate of insurance that the owner of the cargo of coal had no freight at risk, and the question arises whether the omission to state that fact to the insurers, no matter however innocently it happened, constituted a concealment of such a material fact as to vitiate the policy. " Contracts of marine insurance are *uberrimae fidei,* and there is an obligation to voluntarily disclose all facts and circumstances which are material to the risk and not within the knowledge of both parties." 26 Cyc. 617; 1 Arnould Marine Ins. (9th ed.) § 575; 3 Kent's Comm. (12th ed., Holmes) 282. The rule, seemingly correctly stated by Arnould in section 575 is: " Whether such suppression of the truth arise from fraud (that is, from a willful intention to deceive for the party's own benefit), or merely from mistake, negligence or accident, the consequences will be the same. The ground, in short, on which the policy is avoided is that the party has been, in fact, deceived, not that the other party has intended to deceive him." In section 589 the rule is thus stated in 1 Arnould: " The duty on the part of the assured to disclose material facts is not limited to facts which have a direct bearing on the extent of the risks or dangers, to which the subject of the insurance will be exposed. All facts are material which would affect the mind of a rational underwriter, governing himself by the principles on which underwriters in practice act, as to either of the following points: *First,* whether he will take the risk at all; *second,* at what premium he will take it." It has been expressly held that if the knowledge of the facts that were suppressed would have induced the insurer to demand a higher premium or to refuse altogether to underwrite it would be sufficient to invalidate the

policy. *Murgatroyd* v. *Crawford,* 3 Dall. 491; *Kerr* v. *Union Marine Ins. Co.,* 130 Fed. Repr. 415; *Carrollton* v. *American C. Indemnity Co.,* 124 id. 25   In this case the court permitted the expert testimony of underwriters of marine insurance as bearing upon the question of materiality of the omission to disclose to the insurers that the insured had no risk in the freight.  The admissibility of this testimony seems to be justified by the decisions.  In *McLanahan* v. *Universal Ins. Co.,* 1 Pet. 170, 188–189, the opinion reads: " The ultimate fact itself, which is the test of materiality — that is, whether the risk be increased so as to enhance the premium — is, in many cases, an inquiry dependent upon the judgment of underwriters and others, who are conversant with the subject of insurance."  This rule was expressly recognized in *Leitch* v. *Atlantic Mutual Ins. Co.,* 66 N. Y. 100, 107, 108.   The testimony of Mr. Chubb, whose high standing as an expert in marine insurance was not questioned, is that it is customary to insure a c. i. f. value of goods when the freight is at the risk of the shipper, that is, when it has been prepaid or guaranteed, but that no prudent marine insurance underwriter would insure coal upon a valuation substantially equal to the invoice price, plus the freight, where the applicant had neither paid nor guaranteed the payment of the freight.  It seems to me that upon the proofs the court must find that when the certificate of insurance was issued the underwriters were justified in assuming and believing, in view of the failure to disclose the actual facts on the part or in behalf of the insured, that the latter had paid or guaranteed the payment of the freight, and that therefore the plaintiff is entitled to have the certificate canceled and set aside.

Ordered accordingly.