Ladwig v. Jefferson Ice Co. 141 Wis. 191.

LADWIG, Respondent, vs. JEFFERSON ICE COMPANY, Appellant.

*November 13, 1909—January 11, 1910.*

(1, 2) *Expert testimony: Weight: Competency.* (3–5) *Master and servant: Negligence: Injury to servant: Mode of work: Simple appliances: Assumption of risk.*

1. The opinions of experts, so far as they clash with common knowledge or ordinary observation of simple implements, should not be given weight or credence.

.2. Expert testimony directed to ordinary phenomena easily observable by any one of ordinary intelligence is unnecessary and improper.

3. It is not negligence upon the part of the master to lay out a particular mode of doing his work or to furnish particular appliances therefor, where neither such mode nor such appliances are inherently or latently dangerous.

4. When the servant, knowing of such mode and of such appliances, enters and continues in the service, he assumes the ordinary risks thereof arising from such mode which he knows by ordinary observation, and from such appliances which are simple in their construction and not worn out, broken, or defective.

.5. Thus, the risk of injury through the falling of a bracket and the scaffold supported thereby upon which he was working was as-

sumed by a carpenter who had entered and continued in the service with full knowledge of the mode in which the work was: carried on, and had, with his fellow workmen, made, placed in position, and fastened up the brackets (which were simple, easily understood, and not defective), and might have exercised his judgment as to the safety of the mode of hanging them, and might have braced up the bracket in question by such additional contrivances as common sense would suggest, including, if necessary, a scantling from the floor to the outer side thereof..

APPEAL from a judgment of the county court of Walworth: county: JAY F. LYON, Judge. *Reversed.*

For the appellant there was a brief by *Doe & Ballhorn,* and: oral argument by *J. B. Doe.*

*Calvin Stewart* and *Wallace Ingalls,* for the respondent.

TIMLIN, J.     The plaintiff was injured by the fall of a scaffold or staging upon which he was working in the interior of an icehouse at a height of about twenty-two feet above the floor.     This scaffold or staging was fastened against the inside wall of the icehouse and consisted of two triangular brackets. about ten feet apart with a two-inch plank running across and resting upon their upper surfaces.     The controlling facts are without dispute.     There were thirty of these brackets, all alike.     The plaintiff and his fellow workmen constructed the brackets, selected them for use, and attached them to the inside wall.     Plaintiff was a carpenter, but not of great skill or long experience.     Each triangular bracket had two of its sides. inclosing a right angle made of two-by-four inch lumber, while the side opposite this right angle consisted of a brace of the same material connecting the said sides and fastened to them. The sides inclosing the right angle were fastened together at the apex of this angle.     One of these sides was three feet long and was used to carry the scaffold.     The other side was four feet long, and was held perpendicularly against the wall by a round iron bolt ten inches in length and one-half inch in diameter which passed through both sides of the right angle near its-

apex in such direction that it projected downward three and one-half or four inches from the outside of the perpendicular or long side of the bracket and at an angle of forty-five degrees from the latter side. The plaintiff and his fellow workmen were supplied with boring implements, and when in the progress of their work it became necessary to raise the scaffold, they, standing on the former scaffold, would bore a hole higher up into and through the one-inch sheeting boards on the interior of the icehouse, such hole slanting downward and outward in the same direction as the projecting part of the iron bolt before described. They then took a bracket of the kind described from among those furnished, and, raising it up, inserted the projecting portion of said bolt into this hole, bringing the long side of the bracket close to the inside of the wall and perpendicular with it and the short side at right angles with the wall. When two brackets were thus attached the cross-plank was placed thereon and work resumed. This work consisted of stripping off from the interior walls of said icehouse certain boards and scantling which had been inside of the sheeting boards to which the brackets were attached. Such stripping was begun from the bottom; hence the necessity of raising the brackets from time to time when they had stripped off all in reach from their former position, and hence the opportunity· and necessity of fastening the brackets to the sheeting boards thus exposed. Stripping was done with an iron bar two or three feet long and adjusted at the ends for drawing nails or prying off boards, and the workmen sometimes, or usually, after getting a hold with this bar, pressed inward toward the wall, thus increasing the outward tendency of their weight on the scaffold and increasing the strain upon the iron bolt.

The plaintiff and another workman after using and erecting the scaffolds so constructed in this work for five or six weeks co-operated and assisted one another at the time in question in boring the holes in the sheeting for the iron bolt, in raising and putting the brackets in place and in placing the plank

thereon, and then together mounted the scaffold which they had thus constructed, commenced again the work of stripping off, and had been so engaged a few minutes when the bracket at plaintiff's end of the scaffold fell, carrying the plaintiff with it and the plank on which he was standing, injuring the plaintiff as stated.    Nothing was broken or bent or displaced upon the fallen bracket.    It seemed to be in the same condition after its fall as it was when plaintiff, co-operating with his fellow workman, placed it in position.    Some loose statements relative to the iron bolt presenting the appearance of having been once bent and straightened relate to its condition as it was when put in place and also after its fall, but furnish no basis for any claim that the bolt gave way by bending and so caused the fall.    The hole in the sheeting into which the bolt was inserted was found sound and intact.

Under these circumstances the cause of the fall of the bracket became something of a mystery, which the plaintiff attempted to clear up by the opinions of experts substantially as follows: Olson, a carpenter, who testified to the very obvious conclusion that weight on or near the further end of the horizontal bracket arm would exert a pull away from the wall at the top part of the bracket, and if this pull was greater than the resisting force of the iron bolt or its wooden socket the bracket would come down.    Bauerman: That this pull might bend the bolt or split the wood, but if the bolt was not bent nor the wood split he could not account for the fall.    Auld: That from vibrations caused by men working on the scaffold this pull would have a tendency to straighten the bolt.    Davidson, without knowing what was the cause, would surmise that the bracket as it slipped down the side of the wall by reason of overlying weight, and perhaps vibration, became lodged at the lower end, and consequently there was no hold of it at the upper end, and it fell over.    Kappel: That if there was a load placed on the outer end of the bracket it would have a tendency to pull the bolt out, force it up in the timber, and thus let

the bracket come down.   Some one or more of these witnesses said that it would not tend to prevent the bolt slipping out of its socket if the upright arm of the bracket had been nailed to the sheeting.   But this is obviously incorrect.

In his opinion denying a motion to set aside the verdict the learned county judge said:

"The evidence of the expert witnesses showed clearly to me that the bracket was simply a lever of which the lower end was the fulcrum, the bolt was the weight, and the person standing thereon was the power.   The power was also increased by the pressure that the person exerted in forcing off the siding, etc. .... It would seem that the bolt in disengaging itself and leaving the siding would be describing a circle the diameter of which was practically three feet, and that the end of the bolt would have to rise very slightly in order to pass through the hole."

It does not add much to ease of understanding the problem presented to translate it into the terms of the mechanical powers, for all agree there is some strain of the upper part of the bracket in a direction away from the wall on which the bracket is hung.   Hence the iron bolt and the socket hole for it. Every person of ordinary intelligence knows this, and the plaintiff knew it when he bored or assisted in boring the hole in the sheeting and when he hooked into the hole or assisted in hooking into this hole the downward projecting iron bolt. But the so-called lever described by the learned county judge presented a mechanical disadvantage rather than an advantage, because his weight was between his fulcrum and his power and nearer to the latter.   The bolt in leaving its socket would not follow the arc of a circle whose diameter was three feet, and would need to move upward more than slightly before it could leave its socket.   If the lower end of the upright side of the bracket were fixed in position and could not descend, and sufficient power was applied downward and at the outer end of the short arm where it would be most effective, the upper corner of the bracket leaving the wall would de-

scribe an arc of a circle whose center would be the lower end of the upright arm and whose radius would be four feet in length, while the lower end of the projecting bolt would also describe the arc of a circle having the same center, but a radius so much shorter as the lower end of this projecting bolt was below the upper end of the upright side of the bracket measuring along said upright. If there was nothing else to raise the bracket as a whole, the bolt must bend, break, or tear through more than two inches of wood in order to escape. But the fallacy in this kind of computation is that the lower end of the upright side of the bracket does not remain fixed. It also descends with the weight. The weight is not applied at the outer edge of the short arm. It is applied nearer to the wall. Following the viewpoint of the learned county court, the fulcrum is farther from the weight than is the power. How much farther cannot be known without evidence of the exact location of the cross-plank and the place where plaintiff stood at the time of the fall. The weight is applied downward on the whole bracket, and had the exact data for computation been given it would be shown by approved formulæ that the proportion of the whole weight, or power, whichever we choose to call it, which exerted itself to pull out the iron bolt, was small. Neither could the iron bolt raise in its socket merely by the application of downward pressure on the short arm of the bracket.

These are all very simple and obvious considerations known to every person of ordinary intelligence, and the county judge should not have given weight or credence to the opinions of the experts so far as they clashed with common knowledge or ordinary observation of simple implements. When the expert evidence is directed to ordinary phenomena easily observable by any person of ordinary intelligence it is unnecessary and improper, and in the case at bar, where it departed from this, it was demonstrably incorrect. It having been shown by uncontroverted evidence on the part of the plaintiff that the

bracket in question was properly placed with the projecting bolt in its socket and the upright side of the bracket close to the sheeting, and by uncontroverted evidence on the part of the defendant that the bracket was in its normal or usual good condition immediately after its fall and that there was no giving way of the socket, no other efficient cause for the fall of the bracket remains except the exertions of the plaintiff with his iron lever or bar with which he was at work on the scaffold near this bracket when it became detached and fell. It does not appear whether plaintiff was sitting or standing upon the scaffold at the time of the accident. But it does appear that he was obliged at times while on the scaffold to exert considerable power on his bar pushing toward the wall, and this might by jerking, frequent repetition, and great exertion gradually work the iron bolt up out of its socket.

But in any event the case presents the question of a master conducting his work in his own way with simple appliances made, placed in position, and fastened up and easily understood by plaintiff and his fellow workmen. There was no latent or concealed defect in these appliances. They were made of no defective material, and their construction and use were obvious. The plaintiff chose to enter into, and continue in, the service with full knowledge of this mode of carrying on the work. He, with his fellow workmen, was intrusted with the placing of the brackets and the construction of this scaffold, and he was at full liberty, and had ample opportunity, not only to exercise his judgment as to the safety or sufficiency of this mode of hanging the brackets, but also to brace up this bracket by such additional or supplementary contrivances as common sense would suggest, including, if necessary, the placing of a scantling as a brace from the floor to the outer side of the bracket. This would constitute assumption of risk if we were able to find any omission of duty on the part of the master. It is uncontroverted that instructions were given out to the workmen generally that the upright

arm or side of the bracket should also be nailed to the sheeting. Plaintiff did not hear these instructions, although he appears to have been present and one of a group to whom they were communicated.    But it appears that this precaution of nailing the upright side of the bracket against the sheeting in addition to inserting the iron bolt in its socket as before described was at the work under consideration sometimes taken and sometimes omitted.    It was omitted on the occasion of placing the bracket the fall of which caused the plaintiff's injury.    Under these circumstances there was no negligence shown on the part of the employer, but rather a lack of due precaution on the part of the plaintiff, perhaps not amounting to contributory negligence in law, but potent to sustain a finding of contributory negligence had such finding been made.

We prefer to rest this case upon the rule that no negligence on the part of the master is shown.    For what has it done or omitted?    It is not negligence upon the part of the master to lay out a particular mode of doing his work, or to furnish therewith particular appliances for doing his work, where neither such mode nor such appliances are inherently or latently dangerous.    When the employee, knowing of such mode and of such appliances, enters the service and continues in the service of his employer, he assumes the ordinary risks of such service arising from such mode which he knows by ordinary observation, and from such appliances, which are simple in their construction and not worn out, broken, or defective. This is stating the rule for the instant case, and rather more strongly against the employer than the authorities warrant. Without going to the length of disregarding established rules, we can see no liability on the part of defendant.    *Peffer v. Cutler,* 83 Wis. 281, 53 N. W. 508; *Mielke v. C. & N. W. R. Co.* 103 Wis. 1, 79 N. W. 22.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.

KERWIN and BARNES, JJ., dissent.