Ninoff, Respondent, vs. Hazel Green State Bank, Appellant.

*May 31—July 13, 1921.*

*Banks and banking: Money paid on forged order: Negligence: Question for jury: Evidence: Expert opinion: Weight: Communications subsequent to event: Harmless error.*

1. Where the by-laws of a savings bank provided that the bank should not be liable for payments made by it to any person who should produce the depositor's pass-book and that with-

drawals might be made by the depositor personally or by written order, payment on a written order to one producing the pass-book exonerates the bank from liability to a depositor, provided the bank in making such payment was in the exercise of ordinary care.

2. While the testimony of expert witnesses is entitled to full, fair consideration by the jury, it is, excepting in a very limited class of cases, not bound thereby.

3. Whether a savings bank in making payment on a forged order, the pass-book being produced, exercised ordinary care, is, under the evidence, a question for the jury, in view of discrepancies in the signature appearing upon the order of withdrawal and that upon the depositor's signature card, and notwithstanding testimony of experienced bankers that in the exercise of ordinary prudence they would have cashed the order.

4. Although immaterial evidence was admitted that the bank, overlooking the fact that payment had been made on the forged order, telegraphed plaintiff that it would pay no one but him, the jury must be presumed to have considered the evidence as of the date the payment was made, and the admission of evidence as to subsequent communications was not prejudicial error.

APPEAL from a judgment of the circuit court for Grant county: L. H. BANCROFT, Circuit Judge. *Affirmed.*

It appears from the complaint that prior to April 27, 1916, the plaintiff had deposited certain moneys with the defendant, such deposit being evidenced by a pass-book designated as "Savings Account No. 864." That the said pass-book was the property of the plaintiff, of the value of $700.55; that prior to April 27, 1916, some person in the city of Toledo, Ohio, wrongfully took from the plaintiff said pass-book and thereafter caused the same to be delivered to the defendant, who refuses to deliver it to the plaintiff, although delivery has been demanded, and the defendant further refuses to pay to the plaintiff the moneys evidenced by said pass-book and unjustly detains the said pass-book, to plaintiff's damage in the sum of $700.

The answer admits the making of the deposits, the issuance of the book, and sets up that by the making of the

deposit and acceptance of the book the plaintiff assented to the by-laws of the defendant bank, which provided:

"4. Withdrawals of deposits and the interest thereon, may be made by a depositor personally or by written order, if the signature of the depositor be entered on the signature cards of the bank, or by power of attorney duly authenticated. No withdrawal of deposits or interest shall be made unless the depositor's pass-book be produced and the withdrawal entered thereon.

### "Payments to Holders of Pass-books.

"The bank shall not be liable for payments made to any person who shall produce the deposit book of the depositor, unless notice shall have, previous to such payments, been given to the bank by or in behalf of the depositor that said book has been lost, mislaid, stolen or otherwise passed from the possession of the true owner thereof."

The answer further alleged that the defendant had received from the Ohio Savings & Trust Company of Toledo, Ohio, the pass-book of the plaintiff, accompanied by an order directing payment of the amount of the deposit to said Trust Company; that upon receipt of the pass-book the defendant compared the signature to the written order with the signature of the plaintiff on the signature card given by the plaintiff to the defendant at the time of the deposit; that no notice of the loss by the defendant of the book had been given to the defendant; that the full amount thereof had been paid by the defendant to the Trust Company, and that by the transactions stated the pass-book had become its property and was not the property of the defendant.

Upon the trial the court submitted to the jury a single question: "Did the defendant bank fail to exercise ordinary care in making payment to the Ohio Savings Bank & Trust Company on April 27, 1916, of the money owing by it on the pass-book in question?"  To which the jury answered "Yes."

There were the usual motions.   Motion of the plaintiff

for judgment on the verdict was granted and judgment was entered accordingly, from which the defendant appeals.

*S. E. Smalley* of Cuba City, for the appellant.

For the respondent there was a brief by *Blaine & Kemp* of Boscobel, and oral argument by *H. E. G. Kemp.*

ROSENBERRY, J.  The question presented here lies within very narrow limits.  It is undisputed that the defendant bank is not liable if in making the payment in the manner and under the circumstances it was in the exercise of ordinary care.  *Wegner v. Second Ward Sav. Bank,* 76 Wis. 242, 44 N. W. 1096.  The following is a facsimile of the plaintiff's signature appearing upon the signature card:

A facsimile of the signature upon the order upon which the payment was made is as follows:

There was evidence by three bankers of experience that they would, in the exercise of ordinary business prudence and caution, have cashed the order when accompanied by the pass-book as the defendant bank did in this case.  The argument of the defendant is that the evidence in this respect is conclusive and that there is no evidence of want of care on the part of the defendant.

The circumstances under which the book was taken are these: The plaintiff is a Bulgarian and was living in a boarding house in the city of Toledo, where he was working.  He kept his pass-book in his inside coat pocket in a cover furnished by the bank.  He observed the book and knew that

the book was in his possession. Each day he looked in his pocket and saw the cover, apparently undisturbed. About a week after he had last actually seen the book he went to the postoffice to cash a postoffice order and then discovered that the book had been removed from the cover and the cover and its contents returned to his pocket. He immediately notified the bank, but before receiving notice the bank had cashed the order already referred to.

It appears to us that there is in this case, as there was in the case of *Wegner v. Second Ward Sav. Bank, supra,* a material difference in the two signatures. Not only was the spelling of the name different, but the whole character of the writing appears to us to be substantially different. The difference is so great it is for the jury to say whether or not the defendant bank should, in the exercise of ordinary care, have required some proof as to the identity of the person making the signature to the order upon which the money was paid. While the testimony of expert witnesses is entitled to full, fair consideration at the hands of the jury, it is, excepting in a very limited class of cases, not bound thereby. *Ladwig v. Jefferson Ice Co.* 141 Wis. 191, 124 N. W. 407; 22 Corp. Jur. p. 728, § 823; *Baber v. Caples,* 71 Oreg. 212, 138 Pac. 472. The payment here was not made to an individual presenting the pass-book personally, but was made upon the signature to the order, and it was the duty of the bank to have carefully scrutinized the signature, and in case of discrepancy or circumstances raising doubt it should have acted with caution.

Error is assigned because of the admission of certain evidence of communications between the parties subsequent to the payment of the forged order. It appears that in response to a telegram from the plaintiff to the defendant, notifying the defendant of the loss of the book, the defendant telegraphed that it would pay no one but the plaintiff, overlooking the fact that payment had already been made

upon the forged order.  In view of the fact that the only issue submitted to the jury was that of the negligence of the bank in making the payment, we do not see how evidence received as to communications had some days later can be prejudicial.  The court instructed the jury, to be sure, that they should consider all the testimony in the case.  The question submitted by the special verdict related clearly to the exercise of ordinary care in making the payment on April 27th, and we think the jury must be presumed to have considered the evidence relating to that question as of that date, and that the admission of evidence as to subsequent communications, while the evidence is immaterial, did not constitute prejudicial error.

*By the Court.*—Judgment affirmed.