## HART v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

EXPERT EVIDENCE—WEIGHT AND SUFFICIENCY.

In an action to recover for services in excavating a swamp and constructing an embankment, it appeared that by the contract between the parties the defendant's engineer was authorized to determine which parts of the excavated material should be used for the embankment, and which should be "wasted." The plaintiff was to be paid according to the quantity of work in each item, and his expense in separating the excavated material would depend upon the size of the embankment. After the contract was made, the defendant furnished a new plan of the work, the marks and symbols on which indicated, according to the un-

contradicted testimony of experts, a substantial increase in the width of the embankment. *Held,* that this testimony was controlling as to the change in the plans, and that plaintiff was entitled to recover for the additional expense involved.

Appeal from special term, Kings county.

Action by Charles Hart against the city of Brooklyn. From so much of an interlocutory judgment as dismissed plaintiff's second cause of action on the merits, he appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Albert E. Lamb, for appellant.

Almet F. Jenks, for respondent.

CULLEN, J. The plaintiff entered into a contract with the defendant by which he was to excavate Newbridge pond, on the line of defendant's water supply, and construct the dam, banks, and slopes of the pond. For this work he was to be paid, not a gross sum, but certain specified prices for each item of work done, according to its quantity. For excavating the bed of the pond, and the disposal of the material excavated, he was to receive 32 cents per cubic yard. The site of the Newbridge pond, before the commencement of the work, was a swamp or swale, through which there ran two streams. The material to be excavated consisted principally of muck on the surface, and sand or gravel beneath. The plan of the work provided, not only for the excavation of the bed of the pond, but for the construction of banks along its margins. For his second cause of action, the plaintiff complained that the defendant interfered with him in the prosecution of his work, and compelled him to excavate the muck and the sand or gravel separately, thus materially increasing the expense of the work. For this interference he claimed to recover damages.

It seems to me that the question presented by this case is an extremely narrow one. The specifications provided that the engineer should decide upon the quality and character of the excavated materials to be used at various places in forming the embankments of the conduit and supply pond; and the remainder was to be disposed of in grading and filling at such places as the engineer might designate, or, to use the technical term, was to be "wasted." Under these provisions, it is unquestioned that the engineer of the defendant was empowered to direct that no muck should be placed in the embankments surrounding the pond. His direction given for this purpose, that the muck and the sand should be excavated separately, was therefore proper. The appellant does not deny this proposition. If this were all there were of the case, the decision below was correct. But neither the contract proper, nor the specifications, gave any figures of the extent of the improvement to be made, or any dimensions of its details. To obtain these it was necessary to go to the plan. The plan prepared at the time of the execution of the contract between the parties represents the location and contour of the pond. The whole area is plotted into squares drawn to a scale. Along the margins of the pond are strips colored blue, and included within black lines. The width, though not given in figures, is easily ascertainable

by a scale. After the contract was entered into, the defendant's engineers furnished a new ground plan of the improvement. On this plan also is found, surrounding the pond, a blue strip, similar to the other, but about twice its width. It is the question of the width of the bank that creates the only real controversy in the case. It is very evident that the expense of excavation and filling would vary with the size and dimensions of the bank. If the height of the bank was increased, the cost per yard of carrying material there would also be increased. The profile of the work shows the height of the bank, though only by scale. It is equally clear that increased width of the bank would cause an increased cost of excavation, for the bank was to be constructed only of selected material, thus involving extra cost in the separation of material. The remainder of the excavation was to be wasted, which would, of course, be cheaper. The more that could be wasted, and the less put in bank, the less would be the cost of the work per yard. If, therefore, the plan of the pond was altered after the plaintiff made his contract, the defendant is liable. Whether it was altered or not depends wholly on whether the blue strip on the plan represented the width of the bank. The plaintiff contends that it did, and, unless that claim is correct, then no width of the bank is prescribed by the contract, and the matter was left solely to the discretion of the defendant's engineer. On this question the learned court at special term found against the plaintiff, but I think the finding is without evidence to support it. The interpretation of technical terms, marks, or designs is properly the subject of expert testimony. A witness for the plaintiff, Mr. McNamee, a civil engineer and contractor of large experience, testified that the blue strip on the plan would indicate to contractors and to engineers the width of the embankment. Though several of defendant's engineers were summoned as witnesses, not one contradicted this statement, and some seem almost to confirm it. The witness De Verona testified that the horizontal projection of the bank on the first plan was 40 feet, and on the second approximately twice as great. In the plans and drawings of engineers and architects, the common custom of the profession has dictated that different materials used in structures shall be represented in different manners, either of color or shape. Courts cannot take notice of the meaning of these symbols, in the absence of proof; but, equally, when uncontradicted proof is given by competent witnesses of the signification of such a symbol, courts are not at liberty to disregard it. On the evidence in this record, whatever the fact may really be, the defendant did change the plan of the work after it had contracted with the plaintiff for its performance. For any expense occasioned by the change, he was entitled to recover.

The interlocutory judgment appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.