KERWIN, Respondent, v. FRIEDMAN, Appellant.

St. Louis Court of Appeals, December 3, 1907.

1. **FRAUDULENT REPRESENTATIONS: Title to Land: Opinion.** Where the purchaser of land, situated in another State, asked the seller about the condition of the title and was assured by the seller that it was good, and the purchaser traded for the land, relying upon that assurance, the further statement by the seller that "if the title was not good he would make it good," did not relieve him of liability for damages when the title proved to be bad; the statement was not a mere expression of opinion, but a misstatement of a fact.

2. ——: ——: ——: A misrepresentation about the title to land, knowingly made and intended to be relied on, and actually relied on by the purchaser from lack of opportunity to examine for himself or from his confidence in the seller is actionable.

3. ——: ——: **Measure of Damages: Evidence of Value: Province of Jury.** In an action for damages to plaintiff caused by fraudulent representation of defendant regarding the title to land purchased by plaintiff from defendant, where the damages assessed by the jury showed the value they placed upon the land was higher than any witness had sworn to, it was error; the jury could not take their own opinion independent of the testimony; the fact that such land was rated higher in ensuing years was not testimony upon which the value could be fixed in the year of the trade.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED *conditionally.*

*Andrew Johnson* and *Mackay & Mackay* for appellant.

*H. A. Yonge* for respondent.

GOODE, J.—On May 1, 1905, plaintiffs owned three lots in the city of East St. Louis, Illinois, on which there was an incumbrance of $650 and accrued interest. The defendant at that time claimed to own a farm in Scott county, Tennessee. A trade was arranged between the parties by which the plaintiffs acquired defendant's farm and defendant acquired plaintiffs' East St. Louis lots, subject to the mortgage on them. At the same time the defendant lent plaintiffs $250 and took a mortgage back on the Tennessee land to secure the debt. At the time of the trade defendant had in his possession a deed to the Tennessee land dated December 16, 1902, executed by one Frank P. George, as grantor, but containing no grantee, the place for the insertion of such name having been left blank. Defendant wanted to convey the land by inserting plaintiffs' names in the George deed, representing that thereby the title would be conveyed. It turned out that neither George nor the defendant had any title to the land in Tennessee and that George's grantor had had no title. In other words, the title was worthless. When this fact was ascertained, plaintiffs instituted the present action to recover damages, alleging they were induced to make the trade by the false representation of defendant that he held and could make a good title to the Tennessee land, and that this representation was made by defendant fraudulently, he knowing at the time that it

was false. In defense, besides a general denial and certain admissions, the defendant pleaded a counter-claim based on the loan he had made plaintiffs at the time of the trade. This loan was evidenced by a nego-tiable promissory note of date May 2, 1905, payable to Samuel Lowenstein, two years after date, with inter-est at the rate of six per cent per annum and four in-terest notes. Lowenstein acted as agent for the defend-ant and the notes really belonged to the latter. The evi-dence tended to establish the averment of a false repre-sentation fraudulently made by defendant and relied on by plaintiffs, though there was evidence in favor of his innocence. Plaintiffs recovered a verdict of $1,850 and defendant a verdict of $280 on his counterclaim. There-upon judgment was entered in favor of the plaintiffs for the difference between the two sums, to-wit, $1,570. One point made for a reversal of the judgment is that the testimony shows that what defendant said about the condition of the title to the land was a mere ex-pression of opinion and not a statement of fact. This assignment is based on testimony that defendant said if the title was not good he would make it good. His counsel contends such a statement was no more than an expression of opinion that the title was good in George. But there was testimony that defendant said positively the title was good, and again, that it was all right. Plaintiffs inquired about the condition of the title before they would enter into the trade and were assured by the defendant the title was good. It is true defendant did say in the same conversation that if it was not he would make it good; but the evidence tends to show further that plaintiffs were inquiring about the title in order to decide whether they would trade or not, and that they traded in reliance on the repre-sentation of defendant that they would get a good title by the delivery of the George deed with their names inserted as grantees. Mr. Kerwin swore Friedman

said the title was all right and that he (Kerwin) had no knowledge of the title or the land except what he learned from Friedman and that he relied on the latter's squareness and honesty as a man of business. In order to give a verdict for plaintiff the jury were required by the instructions to find the representation regarding the title was false and known by the defendant to be; or that it was intentionally, recklessly and carelessly made by defendant with no reasonable grounds to believe it was true. No complaint is made of the instructions. We have been cited to no authorities which would treat such a statement as defendant made as a mere expression of opinion, instead of a representation regarding the fact. It was a positive assurance that the title was good; not that defendant thought it was good. A misrepresentation about the title to land, knowingly made and intended to be relied on by one contemplating a purchase, and actually relied on by such purchaser from lack of opportunity to examine for himself, or from his confidence in the seller, is actionable. [Holland v. Henderson, 38 Mo. 55; Smith v. Frink, 57 Mo. 239; Caldwell v. Henry, 76 Mo. 254.]

The further point is made for the defendant that the jury ignored the instruction on the measure of damages and all the evidence as to what the value of the land in Tennessee was at the time the trade was made. The court instructed the jury that in case a verdict was given for plaintiffs, it should be for such amount as the jury found to be the value of the Tennessee land at the time of the delivery of the deed purporting to convey it to the plaintiffs; that is to say, on or about May 1, 1905. Two witnesses testified regarding the value of the land at that time and both swore they were familiar with the property and had been for many years. One of those witnesses had been county surveyor of Scott county, Tennessee, and was deputy register of deeds of the county at the time he testified. He gave it as his opin-

ion that the land was worth from seven to eight dollars an acre. Another witness testified it was worth ten dollars an acre. It will be observed that the verdict of the jury was for $250 more than the highest estimate of either witness. This estimate would make the total value $1,600. But the same witness gave testimony that within two years after the trade, similar lands were worth from ten to twenty dollars an acre in that neighborhood and that one piece sold within a year and a half for twenty-five dollars an acre. But it was shown that meanwhile a railroad had been built near the land in controversy and that the tract of land which sold for twenty-five dollars an acre had a vein of coal in it. In view of those facts it is insisted for the plaintiffs, that the jury was justified in finding the land was worth more than ten dollars an acre at the time of the trade, though all the positive testimony was the other way. The argument is that juries are not bound to accept the testimony of witnesses regarding the value of land, or to follow opinion evidence on other issues; and this, generally speaking, is the law. [Kansas City v. Butterfield, 89 Mo. 646; St. Louis v. Ranken, 95 Mo. 152, 8 S. W. 249; Restetsky v. Railroad, 106 Mo. App. 382, 84 S. W. 665.] Juries are allowed to consider all the evidence which sheds light on the issue, test the opinions of the witnesses by their experience and judgment and reason about the matter, neither ignoring the opinions given by the witnesses nor being controlled by them. [Kansas City v. Butterfield, 89 Mo. 648; St. Louis v. Rankin, 95 Mo. loc. cit. 192.] But the present case was tried in St. Louis, far from where the land lies, and it is highly improbable that the jury had any knowledge of its value, except such as could be gleaned from the testimony of the witnesses. It is likewise improbable that they knew any circumstances other than those related by the witnesses which would tend to throw light on the question, and from which they could

reason as to what the land was worth. That this is true is not denied; but it is contended that in view of the supposed advance in values of surrounding lands in the two years subsequent to the trade, the jury was justified in finding the land was worth more than the highest estimate put on it by the witnesses, though this advance was fully explained by events which had occurred meanwhile. Stated otherwise, the argument is that the jury were justified in believing the witnesses underrated the value of the land in dispute, and similar lands, at the time of the trade, and mistakenly treated as an advance in price what was really a part of their earlier value. It strikes us that this would be an undue extension of the rule that juries, while they must regard the opinions of witnesses in determining such issues, may follow their own opinions. Inasmuch as the plaintiffs proved positively the land was worth not to exceed ten dollars an acre at the date of the trade, to allow the jury to say, on such data as they had before them, that it was worth more, would be to accept a pure conjecture in lieu of a proper inference or conclusion from the evidence. While juries may exercise their knowledge, judgment and experience in weighing conflicting opinion testimony, choosing between the discrepant views of experts, and perhaps may come to a conclusion not in exact accord with the opinion of any witness, there are instances in which it is improper for the jury to transcend the limits of the expert evidence, if there is nothing to discredit, either the fairness of the experts, or the reasonableness of their testimony. This is so when the nature of the case is such that the experience, knowledge and common sense of the jurors cannot aid them in the determination of the issue. [Rogers, Expert Testimony, p. 490; Getchell v. Hill, 21 Minn. 464; Wood v. Barker, 49 Mich. 259.] The opinion evidence as to the value of the land in controversy was all introduced by the plaintiffs, and their witnesses united in putting

the highest value it could have had, at ten dollars an acre. Because land was rated higher in the ensuing two years, shall the jury say the land was worth more in 1905, though the jurors had no knowledge of the matter and the witnesses ascribe the higher values to the building of a railroad through the neighborhood? In our opinion such a ruling would lose sight of the reason of the rule which permits jurors, in the exercise of their knowledge and judgment about the matter under inquiry, to find contrary to the opinions of expert witnesses. We think the verdict was clearly excessive in the sum of $250. It was admitted that defendant was entitled to a credit of $1.37, on account of a mistake in computing the amount which he was to recover on his counterclaim. This added to the first excess makes $251.37, and if this sum is remitted from the judgment in favor of plaintiffs within ten days from the delivery of this opinion, the judgment will be affirmed; otherwise it will be reversed and the cause remanded. All concur.