## LEAHY v. DETROIT, M. & T. SHORT LINE RY.

(Circuit Court of Appeals, Sixth Circuit. March 12, 1917.)

No. 2920.

1. NEGLIGENCE ⟨key⟩1—WHAT CONSTITUTES.

"Negligence" is the failure to do what a reasonably prudent person would have done under the circumstances, or the doing of what such person under the existing circumstances would not have done.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1.

For other definitions, see Words and Phrases, First and Second Series, Negligence.]

2. NEGLIGENCE ⟨key⟩121(2)—PRESUMPTION—ACCIDENT.

The mere fact that injury has resulted does not establish negligence on the part of the alleged wrongdoer.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 218, 225, 271.]

3. NEGLIGENCE ⟨key⟩121(1)—ACTIONS—BURDEN OF PROOF.

A party charging negligence as the ground of action has the burden of proving it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217, 220, 224, 227.]

4. TRIAL ⟨key⟩178—MOTIONS FOR DIRECTED VERDICT—DISPOSITION.

In disposing of motions to direct a verdict, the trial court cannot weigh the evidence, but must take that view which is most favorable to the party against whom the motion is made, and, if in such case reasonable men may honestly draw different conclusions, the motion must be denied.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403.]

5. RAILROADS ⟨key⟩350(1)—CROSSING ACCIDENTS—ACTIONS—EVIDENCE—JURY QUESTION.

In an action for the wrongful death of plaintiff's intestate killed when struck by one of defendant's cars at a highway crossing, evidence of defendant's negligence *held* insufficient to carry the case to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1152.]

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John H. Clarke, Judge.

Action by Mary A. Leahy, as administratrix of the estate of Gertrude Helen Delaney, against the Detroit, Monroe & Toledo Short Line Railway. There was a judgment for defendant, and plaintiff brings error. Affirmed.

G. W. Ritter, of Toledo, Ohio, for plaintiff in error.

G. D. Welles, of Toledo, Ohio, for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and EVANS, District Judge.

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

EVANS, District Judge. This litigation resulted from a deplorable accident which occurred at the intersection of the defendant's track and the Matzinger road, near the city of Toledo. The track ran north and south and the road east and west, crossing at right angles. Three sisters were instantly killed. One of them was Gertrude Helen Delaney. The plaintiff was appointed administratrix of her estate, and began this action in the court of common pleas of Lucas county, from which it was removed to the court below upon the petition of the defendant, which is a Michigan corporation.

Omitting certain allegations which were struck out of the petition because held to be immaterial, the basis of the plaintiff's claim for damages resulting from the death of her intestate is stated in the petition as follows:

"Plaintiff says that, at the time said electric car ran into and collided with said automobile, said electric car was negligently being propelled by defendant at a high and dangerous rate of speed, to wit, in excess of 35 miles an hour, and that defendant negligently failed to give said decedent proper and sufficient warning, or any warning, of the approach from the south of said car that so ran into and collided with said automobile, and that said defendant negligently failed to give to the driver of said automobile proper and sufficient warning, or any warning, of the approach from the south of said car that so ran into and collided with said automobile.

"Plaintiff says that the death of said decedent was caused directly and proximately by the said negligence of the said defendant."

The defendant by its first defense put in issue each of the allegations above set forth.

After the testimony had all been heard, the defendant moved the court to arrest the evidence from the jury and direct a verdict in its favor. This motion was sustained, the verdict and judgment were entered accordingly, and the plaintiff brought the case here. The vital question thus presented is whether the evidence was sufficient to show negligence on the part of the defendant.

[1-3] The settled definition of "negligence" is that it is "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done." Railroad Co. v. Jones, 95 U. S. 441, 24 L. Ed. 506; The Nitro-Glycerine Case, 15 Wall. 536, 21 L. Ed. 206.

In the latter case (15 Wall. 537, 21 L. Ed. 206), the Supreme Court also said:

"The mere fact that injury has been caused is not sufficient to hold" one accused of negligence. "No one is responsible for injuries resulting from unavoidable accident, whilst engaged in a lawful business. A party charging negligence as a ground of action must prove it. He must show that the defendant, by his act or by his omission, has violated some duty incumbent upon him, which has caused the injury complained of."

Indeed, the clearly established rule in such cases is that the onus is on the plaintiff.

[4, 5] With these well-settled propositions in mind, we approach the consideration of the question whether the learned trial judge was correct in holding that plaintiff's allegations of negligence had not been established by the testimony.

It was conceded that the defendant operated a trolley line of railway between Toledo, Ohio, and Detroit, Mich., and that for operating and propelling its cars it used electricity as its motor power.

The intersection of defendant's track and the Matzinger road was in the open country. There was only one dwelling house in the immediate vicinity, which was a frame house located along the west side of the defendant's track and about six feet from its west rail. It faced north, and its front was 51 feet from the Matzinger road. West of the dwelling and appurtenant to the premises were a cider mill and two barns, the last of the latter being about 300 feet west of the intersection. There were also a number of trees on the premises, and the danger of approaching the intersection from the west was increased by the presence of these structures and the trees near the south side of the road.

Frederick P. Leahy, a resident of Toledo, owned and operated a Ford automobile. In the afternoon of Sunday, July 6, 1913, he took his brother-in-law and three of his wife's sisters as his guests for a ride in his automobile. The brother-in-law sat with him and to his right on the front seat, and the three sisters sat on the rear seat; plaintiff's intestate sitting between the other two. The automobile, moving along the Matzinger road, approached the intersection from the west. Leahy did not stop the automobile, but did lower its speed and decrease its power as it came near the defendant's track at the crossing. He testified that he looked and listened before doing so, and that he did not then see nor hear the approach of any car from the south; but he drove the automobile upon the defendant's track, and before it had passed entirely over the track the automobile was struck near its rear axle by one of defendant's cars which rapidly approached the intersection from the south, and the three young women were thereby killed—one of them being the plaintiff's intestate. When the automobile approached the track at the intersection its top was thrown back. It was going at a speed of about 10 miles an hour. The driver of the automobile had shortly before seen one of defendant's cars go northward. When he first saw the car that struck him, it was within a short distance of him, probably alongside the dwelling house, and the car was then running rapidly, probably 20 or 25 miles an hour, and could not have been stopped in time to avoid the collision.

There was evidence showing that, if a person was located near the center of the Matzinger road at a point 10 feet west of the crossing, there was no obstruction which could, if he looked, prevent his seeing at least 310 feet southwardly along the defendant's track; and that, if he was located at a distance of 15 feet west of the intersection, there was no obstruction which could prevent his seeing at least 150 feet southwardly along the track. There was evidence tending to show that before the car collided with the automobile its whistle had been sounded in the usual way of two long and two short blasts at the usual place about 900 feet south of the crossing; that a similar signal was blown about 150 feet from the crossing; and that the driver of the automobile, who is the husband of the plaintiff and the brother-in-law of her intestate, had previous knowledge that the de-

fendant operated an electric railroad and that there was' an alarm signal bell at the intersection.

There was also evidence tending to show that several years before the accident the defendant had installed an electric signal alarm system known as the Hoschen bell, which was operated by means of a block called a cut-in generator; that by this device, when a car runs over the block, the impact causes the signal bell, wherever located, to ring and to continue ringing until after it has been passed by the car which caused it to begin; that in this instance the block was located at least 1,300 feet south of the crossing; that this system of alarm bell signals is used by defendant; that it is regarded as the most useful and effective means of signaling for crossings; that it is used by many trolley lines; that the system was, at the time of the accident, in good repair; that when the defendant's car which struck the automobile passed over the block it caused the bell at the crossing to begin to ring; that it did then begin to ring; that it did so continuously until after the accident; that it was ringing at the time the automobile approached the crossing and when it was driven upon defendant's track; that the motorman on defendant's car, after seeing that the driver of the automobile intended to drive it upon the track, when the car was a short distance away, endeavored to stop his car, but could not do so because he was too near the automobile when it came upon the track in front of the car; that the car was being run at about its ordinary speed for that point, namely, about 25 miles per hour, until the motorman saw the danger and tried to avoid it; and that defendant had no gate nor watchman at the crossing because it had installed the electric alarm signal system instead, and regarded it as better.

There was evidence showing that at the crossing and facing the west there was a large diamond-shaped sign with the words thereon, "Look out for the Cars—Railroad Crossing"; that this sign was on a pole about 10 feet high; that there was nothing to prevent passengers in the back seat of the automobile from seeing that sign; that there was nothing more to obstruct the view of or prevent the hearing by persons in the back seat than there was of those in the front seat of the automobile; and that nothing was said to the driver of the automobile by plaintiff's intestate to the effect that the bell was ringing and that the driver should look out.

In this summary of the testimony we have taken the view of it which is most favorable to the plaintiff, and none of it was in any essential respect contradicted. It should be stated, however, that the driver of the automobile testified that he listened, but did not hear, the bell ringing until after he had driven upon the track. Many witnesses, including some of those called for the plaintiff, having explicitly testified that, in fact, the bell was ringing, plaintiff's counsel, answering an inquiry from the court, in effect stated that he did not intend to contest that point further. Accepting this, the court charged the jury that it was entirely undisputed that the bell was ringing a considerable time before the accident, and no exception appears to have been taken to that part of the charge.

This being the situation, the questions presented by the motion to direct a verdict for defendant were neither complex nor difficult. They must, nevertheless, be considered in subordination to the well-settled rule that in disposing of motions to direct a verdict the trial court cannot weigh the evidence, but must take that view of it which is most favorable to the party against whom the motion is made, and deny the motion if the evidence, when thus viewed, will warrant the conclusion that fair-minded men might honestly draw different conclusions therefrom. Marbury v. Ill. Cen. R. Co., 176 Fed. 9, 99 C. C. A. 483, and cases cited; Carolina, etc., R. Co. v. Stroup, 239 Fed. 75, —— C. C. A. ——, decided by this court February 6, 1917.

The plaintiff in her petition distinctly charged the defendant with negligence in three respects: First, that when the collision occurred the defendant was negligently operating its car at a high and dangerous rate of speed, namely, 35 miles an hour; second, that it failed to give decedent proper and sufficient warning of the approach from the south of the car that struck the automobile; and, third, that it failed to give the driver of the automobile proper and sufficient or any warning of the approach from the south of its car which collided with the automobile. The burden rested upon the plaintiff to establish by a preponderance of the testimony at least one of these specifications of negligence. The evidence upon these various phases of the negligence charged when viewed in a light most favorable to the plaintiff must be subjected to the test to which we have referred, viz. whether fair-minded men, in considering it, would probably have reached different conclusions upon the question of whether the defendant had done anything which an ordinarily prudent man would not have done under the circumstances, or whether the defendant had omitted to do anything which an ordinarily prudent man would have done under the circumstances. The uncontradicted testimony was that the car was running at about its usual speed when it approached the crossing. As the intersection was in the open country, we think the court below, in view of the evidence, was justified in concluding, as matter of law, that the rate of speed of the car was not improper. And there was neither claim made nor testimony offered by the plaintiff that defendant's motorman, after discovering the automobile upon the track in front of the car, had failed to do all that he reasonably could have done to avoid the accident.

The uncontradicted evidence was that the usual whistle signals were given and repeated by the motorman on the car at the places where they were usually given. The evidence was not contradicted that a plainly legible and visible sign was placed at the crossing on a board which was fastened to a pole about ten feet high, and which warned all persons that there was a railroad crossing, and to look out for the cars. While there was neither gate nor watchman at the intersection, it is not disputed that the defendant, several years previous to the accident, had installed as a substitute for them an electric alarm bell, designed to begin ringing when an approaching car was 1,300 feet away, and to continue to ring until the car had passed the intersection. This system was extensively used by trolley lines and was regarded

as the best and most reliable mode of attracting the attention of all persons approaching such crossings, inasmuch as, when it started ringing, the bell continued loudly to proclaim a warning to all persons who were approaching the intersection until the approaching car had passed. The question was whether all this was what a reasonably prudent man would have done under the circumstances. And not only was there an installation of this alarm bell, but the proof was uncontradicted that the bell was ringing before, at the time, and after the collision of the automobile with defendant's car. In these circumstances, we are of opinion that only one conclusion could have been reached by fairminded men when considering the evidence, and that conclusion would be that, though the decedent and the driver of the automobile might not in fact have heard the ringing of the bell, and might not, in fact, have seen the car before the automobile got upon the track, nevertheless that the plaintiff had entirely failed to prove the negligence she had charged in her petition. We are of opinion that there was no other conclusion that could properly have been reached by the court below, and that, in directing a verdict for the defendant, no error was committed.

The defendant's second defense was that the plaintiff's intestate had contributed to her injuries by her own negligence in the various respects specified in the answer. As what we have said disposes of the case, we need not consider any of the questions arising upon this defense.

Various other errors were assigned by the plaintiff and have been considered, but it will serve no useful purpose to discuss them.

The judgment is affirmed, with costs.