ESTATE OF BUTT: PEHL and wife, Appellants, vs. DURST, Administrator, Respondent.

*May 5—June 5, 1923.*

*Evidence: Weight to be given expert testimony: Survivorship in common disaster.*

1. A party upon whom it devolves to establish his case by a preponderance of the evidence does so even if the evidence he produces is that of experts, where it is in no way impeached.
2. Evidence of those persons who by reason of special study and experience possess knowledge and judgment not possessed by mankind in general cannot be ignored.

3. Expert testimony, when properly admitted, must be weighed and considered as other testimony.

4. Where several persons were asphyxiated in a small room heated with a hot-air register connected with a hard-coal furnace, the effects of monoxide gas on different persons when inhaled, its relative weight and its diffusion with the air, and the probable currents of air following the heat that came from the hot-air register, were properly matters of expert testimony.

5. A husband, his wife, and their children were asphyxiated by monoxide gas, and the evidence of experts was substantially to the effect that the wife survived her husband. *Held*, the evidence being substantially all one way, it was the duty of the trial court to find accordingly.

APPEAL from a judgment of the county court of Green county: JOHN L. SHERRON, Judge. *Reversed*.

On the night of November 24, 1920, five persons, sleeping in a room seven and one-half feet wide, sixteen feet long, and eight feet high, met their death by monoxide gas poisoning. The tragedy was not discovered for several days thereafter. When found, Henry Butt was lying on his back near the south wall at the back of the bed. The ceiling sloped down toward his head, conforming to the roof. His wife, Ernestine, lay on her back at the front of the bed. She held at her right side, with his head pillowed on her shoulder, her youngest son, two years old. A second son, three years old, lay on his right side facing the father and between the father and mother. The bed stood in the southeast corner of the room near the walls. The south wall was the only outside wall. A brother of Mrs. Butt lay on the mattress on the floor. There were two windows in the room but both were tightly closed, and the door leading into the room was also tightly closed. There was a hot-air furnace burning hard coal in the basement. Whether the gas came through the hot-air register located near the center of the north wall just above the base-board, or whether it found its way through cracks in the door, is not definitely disclosed. In the record it is rather assumed to have come through the register.

The father and mother were each twenty-three years of age. There is some dispute as to their relative condition of health, but we may assume for the purposes of this case that they were both in fair physical condition. The children were robust and healthy. These facts are undisputed, and the question before the court was as to survivorship. If the father survived the wife and children, then his estate would go to his brothers and sisters. If, however, either of the children or the wife survived the father, then the estate would go to the parents of the wife, who are the appellants herein. The testimony worthy of consideration, aside from that of the undisputed facts, came from experts. The appellants produced Dr. Warren Hill, a resident of Milwaukee; a physician of thirty years' practice; twelve years professor of toxicology in the Milwaukee Medical College; five years in the medical department of Marquette University, and prominent in the American Medical Association. He had had experience in cases relating to asphyxiation, both in practice and in hospital work, and at one time had made an investigation in regard to it and had written his experiences therein. The appellants also produced Dr. Henry G. W. Reinhart, a physician and surgeon, of Chicago, Illinois. He was a graduate of Rush Medical College; had been in active practice over twenty-three years; was pathologist at St. Elizabeth's Hospital eight years; had taught medical jurisprudence, and had made experiments in relation to combustion of illuminating gas with reference to water heaters in bath rooms without exit flue. Deaths had occurred from monoxide gas from these heaters. The appellants also called as a witness Dr. E. R. LeCount, a physician, of Chicago; a teacher in Rush Medical College for ten years, and who had had experience in cases of carbon monoxide poisoning. These expert witnesses were prominent in their professions. Each of these witnesses testified in substance that, assuming the conditions heretofore stated, it was his belief, based on his experience and knowledge of monoxide gas poisoning and the effect thereof

upon the human system, that the father was the first victim of the poisoning, and that the mother and the children survived the father. They reached this conclusion chiefly from the fact that women, living an indoor life, become more or less immune to the toxic effects of gas, and also that they require less oxygen than men, who live an outdoor life. The effect of monoxide gas is upon the red corpuscles of the blood, and results in depriving the body of the necessary oxygen. As to the children, these witnesses testified that young children require less oxygen than older people, and that under similar conditions of gas poisoning they would outlive the father in this case but might not outlive the mother; who would be more or less immune. Each of the witnesses was positive in his convictions and was not shaken by cross-examination.

These witnesses further testified that owing to the size and shape of the room; of the cold outside wall and warm inside walls; the point of entry of hot air and gas, and the relative weight of monoxide gas and air, a current of air would exist in the room which would carry the gas to the father first and that he would thus receive the first and stronger volume of gas.

On the part of the defense two physicians were produced: Dr. Lloyd H. Helms, who graduated from college in 1919, and who had had no practical experience in poisoning of this kind. He testified that he could not say from his knowledge which of the family survived. He said that with our present knowledge it would not be possible to ascertain the fact except on the basis of theory. We may disregard his testimony as an expert because of incompetency for lack of experience. The other expert witness was Dr. R. R. Clark, who had practiced medicine forty years in Southern Wisconsin and in Iowa. He testified that there was nothing in his knowledge as a physician from which he could state that there was a particle of evidence to indicate who of the group died first. He could not say whether

the female or the male would stand more carbon monoxide, but he did testify that "From my knowledge and experience I think that a child or children, two or three years of age, could stand more carbon monoxide than an adult."

The court found: "That there is an absence of proof tending to show (a) Which one of the four, to wit, Henry Butt, his wife Ernestine Butt, Henry Butt, Jr., and Harold Butt, his two sons, died first; (b) Which of the four survived the others; (c) The actual survivorship of Henry Butt and the members of his family;" and as conclusions of law found that the estate of Henry Butt descended to his next of kin, and judgment was entered accordingly. The appellants excepted to the findings, and claim that the evidence is conclusive that the wife and children, or one of them, survived the father.

*J. M. Becker* of Monroe and *Lyman G. Wheeler* of Milwaukee, for the appellants.

*W. H. McGrath* of Monroe, for the respondent.

CROWNHART, J. It devolved upon the appellants herein to establish their case by a preponderance of the evidence. If they did this, even though the evidence was that of experts, such evidence could not be disregarded by the court unless it was in some way impeached. It seems that the testimony of appellants' expert witnesses was not impeached in any manner. Instead of its being contradicted, as to the children it was in substance agreed to by the only expert produced by the defendant who had any experience with monoxide gas poisoning and who was qualified to testify. He testified to facts which would justify a conclusion of the court that the children survived the father. As we view this case the evidence is practically undisputed, and only one conclusion can be drawn from the evidence if we are to give the expert evidence any weight, and that is that the children and the mother survived the father. That the children survived the father all the expert evidence is in

agreement. The trial court evidently disregarded the expert testimony, following the rule often laid down that such evidence is to be viewed with caution and may be disregarded altogether where it conflicts with the common knowledge of judge or jury. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Ladwig v. Jefferson Ice Co.* 141 Wis. 191, 124 N. W. 407. Language used in the *Baxter Case* lends some support to the action of the court in disregarding the opinion evidence in this case. However, there is a class of expert testimony that is competent, worthy of consideration, and which cannot be ignored by the trial court or jury, and that is the evidence of those persons who, by reason of special study and experience, possess knowledge and judgment not possessed by mankind in general. Our Reports contain many cases where such evidence has been considered of much probative force. See *U. S. H. Co. v. Jenss,* 128 Wis. 162, 107 N. W. 293. Where expert testimony is properly admitted it must be weighed and considered as other testimony. In this case there were many physical facts which the judge might consider together with the expert testimony. But without expert testimony the cause would have been left wholly in the dark. It was only by respondent's expert witness that the cause of death was determined. The size of the room in which the deaths occurred, the location of the entry of the poisonous gas, the location of the bed and the position of the bodies thereon, the age of the decedents together with their physical conditions, were physical facts established in the case. But the effects of monoxide gas on different persons when inhaled, its relative weight and its diffusion with the air, the probable currents of air following the heat that came from the hot-air register, were properly matters of expert testimony. None but experts could know the effect of monoxide gas on the human system or how it would affect different persons under different circumstances. We consider that

the trial judge was bound by such expert testimony in the absence of anything tending to impeach it. The evidence being substantially all one way, the duty of the court was to find accordingly.

*By the Court.*—The judgment of the county court is reversed, with directions to enter judgment in favor of the appellants.