## UNITED STATES v. LUMBRA.

### No. 182.

Circuit Court of Appeals, Second Circuit.
March 6, 1933.

Harry B. Amey, U. S. Atty., of Burlington, Vt., and Allen Martin, Asst. U. S. Atty., of Essex Junction, Vt. (Davis G. Arnold, William J. Hession, and Lawrence A. Lawlor, all of Washington, D. C., of counsel), for the United States.

J. A. McNamara, of Burlington, Vt., and Harold C. Sylvester, of St. Albans, Vt., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the government from a judgment in favor of Newton W. Lumbra, who brought action to recover upon a war risk insurance policy. We think the judgment must be reversed, because there was no evidence that on May 1, 1919, when the policy lapsed for nonpayment of premiums, it was reasonably certain that the disability of the insured would continue throughout his life.

From 1917 to 1919 Lumbra was a soldier in the military service of the United States. He testified that he was injured in France during a bombardment by the explosion of a shell, which fell near him while he was on his way back from the trenches to his dugout. He suffered a physical injury to his ankle, and was thrown down and rendered unconscious by the concussion. The explosion occurred on June 17, 1918. He was taken into his dugout, where he regained consciousness, and afterwards to the hospital, from which he was discharged late in August. Before the explosion he had been in good health. While confined in the hospital, he said that he had "faint, weak spells, dizzy spells—everything go black, and the sweat stand out on me and I would have to sit down." As soon as he had recovered from the injury to his ankle, he went back to his company and was given light work in the kitchen, but the "spells" continued and got gradually worse. After his return to the United States from France and his discharge from military service, which was on April 29, 1919, he went to his mother's house in Vermont, and did nothing for three or four months. He then began to work for the Wilcox Hall Company, rolling logs in their vats. This work was found to be too hard for him, and he was put at something lighter. He lost about half his time

because of the dizzy spells, which got worse, and finally in 1921 he was forced to give up this employment. He then went to St. Albans and stayed for some time at a sister's, after which he obtained employment as a machinist's helper with the Vermont Central Railroad. He first worked for the railroad in that capacity, and later as a laborer. This employment with the railroad lasted from June, 1922, for about a year, but he lost considerable time owing to his ailment. In June, 1923, he went to work for the Boston & Maine Railroad, and worked until November, losing considerable time with it because of his condition. He then returned to the Vermont Central and remained with it until February, 1929, but was put at light work, and finally was only able to sweep around the railroad shop and attend to the lavatories. His attacks increased in frequency; and in 1923 they manifested themselves in epileptic seizures, which became so frequent and severe that in 1929 he had to cease all employment. From 1926 Lumbra was in the hospital seven different times from two weeks to two months. There was testimony that the railroad employed him as long as it did because he was an overseas veteran and veterans were specially favored.

Dr. Skeels testified as an expert on behalf of the plaintiff. He said that in his opinion he had "epileptiform convulsions * * * and they were caused by an injury he had from the high explosive. * * * " But there was no testimony that when he allowed his policy to lapse his condition was such that it could be said with reasonable certainty that he then had epilepsy or that epilepsy would ensue or that for any reason he was then permanently disabled. There was evidence from which a jury might find that, when the plaintiff ceased to pay premiums in May, 1919, he was totally disabled, but none from which they might find that his disability was permanent.

There was evidence on behalf of the defendant that the plaintiff was not subject to epileptic seizures, but that his condition was one of "mixed neurasthenia and hysteria." The defendant also introduced various applications by Lumbra for employment with the Central Vermont Railroad in which he stated that he had no physical defect. The plaintiff's own evidence, however, was substantially as we have stated.

▓ There is no liability for permanent total disability occurring after the lapse of a war risk insurance policy, even though caused by injuries suffered during military service and while the policy is in force. Eggen v. United States (C. C. A.) 58 F.(2d) 616; United States v. McLaughlin, 53 F.(2d) 450 (C. C. A. 8). Liability must be founded upon total permanent disability while the policy is in force.

▓ Total disability is any impairment of mind or body which renders it impossible for the insured to engage continuously in any substantially gainful occupation, and total disability is permanent if it is founded upon conditions which make it reasonably certain that it will continue throughout life. In the present case a jury might find that in May, 1919, the insured could not engage continuously in any gainful occupation. He testified that he was then subject to spells of dizziness and faintness which prevented continuous work, but there is nothing to show that at that time conditions were such that it could be said with reasonable certainty that he was not likely to recover. Dr. Skeels' testimony that in his opinion the epileptiform convulsions were caused by an injury from the high explosive was no proof that in May, 1919, it was reasonably certain that permanent disability would result from his then condition. Dr. Skeels never said in words or substance that a man having a subsequent bodily history like that of Lumbra was in a condition in May, 1919, that made permanent disability reasonably certain. Nor did any one testify that in May, 1919, the "spells," if arising from the explosion of the shell near the plaintiff would be permanent or would result in epileptic convulsions proximately or ultimately. It is not enough to show that four years after the "spells" began epilepsy supervened. In May, 1919, the plaintiff himself was not aware of any permanent disability, nor apparently was his physician, Dr. Titus, who treated him in December, 1920, for "rheumatism, chronic bronchitis and nervousness." It is not shown that his condition was incurable in May, 1919, merely because it became so years later. For aught we know, various things other than the shock of the explosion may have contributed to the epileptic convulsions, even though the convulsions would not have occurred without it. For a layman or a petit jury to say that Lumbra's supposed brain lesion or other injury caused by the explosion, though sufficient to produce attacks of dizziness and headaches, involved a condition which rendered it reasonably certain that disability would continue during lifetime, is indulging in mere guesswork. They and we manifestly know nothing about it, and the plaintiff's case was not established by

798

proof that epilepsy finally ensued. The only one who can offer convincing testimony on such a subject is an expert. Such a person may be able to say that the conditions in May, 1919, were reasonably certain to produce permanent disability. No such evidence was produced, and the plaintiff failed to establish his claim because it was lacking. Eggen v. United States, 58 F.(2d) 616 (C. C. A. 8); United States v. McLaughlin, 53 F.(2d) 450 (C. C. A. 8); Blair v. United States, 47 F.(2d) 109 (C. C. A. 8). This result is in accordance with the rule laid down in Clapp v. United States (C. C. A.) 63 F.(2d) 793, the opinion in which is filed herewith.

The judgment is accordingly reversed.