## UNITED STATES RADIATOR CORPORATION v. HENDERSON et al. *

No. 879.

Circuit Court of Appeals, Tenth Circuit.

Dec. 20, 1933.

*For opinion denying rehearing, see 68 F.(2d) 733.

George L. Nye, of Denver, Colo. (Clyde
C. Dawson, Jr., and Pershing, Nye, Bos-

worth & Dick, all of Denver, Colo., of counsel), for appellant.

G. Dexter Blount, of Denver, Colo. (Harry S. Silverstein and David Rosner, both of Denver, Colo., on the brief), for appellees.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge (after stating the facts as above).

■■ The case was submitted to the jury on the issue, whether the fire that consumed plaintiffs' house and furnishings—"was due to the negligence of the defendant in that the boiler in question, which the defendant manufactured and put upon the market * * * was negligently and carelessly designed or manufactured in one particular only, in that the smoke hood was not securely fastened to the top of the boiler."

The jury was further instructed: "You must further find that the act of the defendant in adopting this particular design was an act itself which was imminently dangerous to the property of those for whose use the boiler was designed and constructed. Otherwise your verdict must be for the defendant." The jury was further instructed that the mere fact that danger might possibly result was insufficient to make the manufacturer liable for injuries, and it must appear that injury would probably result; that if it was caused by the installation or operation of the boiler, or that those two factors contributed directly to the fire which destroyed plaintiffs' property, the finding should be for defendant; that the jury could not find for plaintiffs unless they had proven by a preponderance of the evidence that the direct and proximate cause of the fire was the blowing off of the hood and thereby setting the house on fire.

At the close of all the evidence the defendant moved for a directed verdict, and assigns error in its refusal. In support of this assignment attention is first called to the fact that the furnace was not sold to Henderson, hence there was no contractual relation between the parties; that no distinction can be drawn between a manufacturer of furnaces and a manufacturer of threshing machines; that a threshing machine under the classification set out in Huset v. J. I. Case Threshing Mach. Co. (C. C. A.) 120 F. 865, 61 L. R. A. 303, where the injury was to a third person, was placed in the third exception stated in the opinion in that case, in which exception actual knowledge of the imminence of danger to life and limb is a requisite element; and it is argued that unless the furnace can be brought under the first exception in the Huset Case, which does not require proof of knowledge of imminent danger, that appellant is not liable. The Huset Case was cited with approval and in part at least relied upon in Hruska v. Parke, Davis & Co. (C. C. A.) 6 F.(2d) 536, and Lynch v. International Harvester Co. (C. C. A.) 60 F.(2d) 223. It is impliedly, if not expressly, conceded however by counsel that where the article involved is inherently and imminently dangerous actual knowledge on the part of the manufacturer of the danger need not be proven. Thornhill v. Carpenter-Morton Co., 220 Mass. 593, 108 N. E. 474, 491: "Proof, however, of actual knowledge is not required where the article is so made up as to be inherently harmful. The manufacturer who puts or causes the component parts to be put together, or accepts them as his own after they are assembled, must be presumed to know the nature and quality of the resultant compound which he solicits the public to purchase." But we answer the contention with the opinion in MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, which has been so widely followed in both state and Federal courts, wherein false labels on poisons (included in the first exception to the Huset Case), a defective scaffold for workmen, a defective coffee urn, and a defective automobile wheel are included in the same class relative to the question of knowledge.

Cases that follow MacPherson v. Buick Motor Co., supra, in that respect, involving various and widely different fabrications, are: Johnson v. Cadillac Motor Co. (C. C. A.) 261 F. 878, 8 A. L. R. 1023; Employers' Liability Assur. Corp., Ltd., v. Columbus McKinnon Chain Co. (D. C.) 13 F.(2d) 128; Goullon v. Ford Motor Co. (C. C. A.) 44 F. (2d) 310; Clark v. Standard Sanitary Mfg. Co., 149 A. 828, 8 N. J. Misc. 284; Smith v. Peerless Glass Co., 259 N. Y. 292, 181 N. E. 576; Flies v. Fox Bros. Buick Co., 196 Wis. 196, 218 N. W. 855, 60 A. L. R. 357; Heckel v. Ford Motor Co., 101 N. J. Law, 385, 128 A. 242, 39 A. L. R. 989; Barabe v. Duhrkop Oven Co., 231 Mass. 466, 121 N. E. 415; Van Winkle v. American Steam-Boiler Co., 52 N. J. Law, 240, 19 A. 472; Farley v. Edward E. Tower Co., 271 Mass. 230, 171 N. E. 639, 86 A. L. R. 941; Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N. W. 392; Coakley v. Prentiss-Wabers Stove Co., 182 Wis. 94, 195 N. W. 388. Some of the cases cited were prior to the MacPherson Case. All of them go upon the principle that "the manufacturer of an appliance, that

92

will become highly dangerous when put to the use for which it is designed and intended because of defects in its manufacture, owe to the public a duty, irrespective of any contractual relation, to use reasonable care in the manufacture of such appliances."

Obviously, a heating plant in a dwelling is an instrumentality imminently dangerous to life and property, if not made and operated with appropriate care; and there is proof in support of the verdict that appellant was guilty of negligence, as charged, in designing and making the smoke hood without means of attaching it to the dome so it would not be displaced by explosions, thus causing release of flame under and in proximity to the ceiling. There is no proof of negligent operation. There is evidence that other manufacturers placed a smoke hood on top of their furnaces, but what they did was evidentiary only and not controlling on the subject of negligence. Chicago, Great Western Ry. Co. v. M'Donough (C. C. A.) 161 F. 657; Texas & Pac. R. Co. v. Behymer, 189 U. S. 468, 23 S. Ct. 622, 47 L. Ed. 905; American Coal Co. v. De Wese (C. C. A.) 30 F.(2d) 349; Parker v. Cushman (C. C. A.) 195 F. 715. Besides, it appears that the American Radiator Company securely fastened its smoke hood to the top of the dome for several years prior to this fire.

Other claimed errors are assigned and argued, but in the light of the whole record they seem to us to be without merit.

Affirmed.

PHILLIPS, Circuit Judge (dissenting).

The general rule is that a constructor, manufacturer, or vendor of an article is not liable to third persons, with whom he has no contractual relations, for negligence in the construction, manufacture, or sale of such article. Huset v. J. I. Case Thresh. M. Co. (C. C. A. 8) 120 F. 865, 867, 61 L. R. A. 303; Employers' Liability Assur. Corp. v. Columbus McKinnon Chain Co. (D. C. N. Y.) 13 F.(2d) 128. This is because ordinarily he owes no duty to such third persons, and there is no actionable negligence where there has been no breach of duty. Northern Pac. R. Co. v. Adams, 192 U. S. 440, 450, 24 S. Ct. 408, 48 L. Ed. 513; Fallon v. United Railroads of San Francisco, 28 Cal. App. 60, 151 P. 290, 293; Hartnett v. Boston Store of Chicago, 265 Ill. 331, 106 N. E. 837, 839, L. R. A. 1915C, 460; Gibson v. Kansas City Pack. Box Co., 85 Kan. 346, 116 P. 502, 503, Ann. Cas. 1912D, 1103; Smith v. Clark, 125 Okl. 18, 256 P. 36, 38.

But such a duty may arise from other than contractual relations. The constructor, manufacturer, or vendor of an article which is inherently and imminently dangerous, or which though not imminently dangerous in itself becomes so if not designed, constructed or manufactured with due care, when applied to its intended use in the usual and customary manner, owes a duty to the public to exercise ordinary care commensurate with the danger, in the designing, constructing, and manufacturing of such article. Goullon v. Ford Motor Co. (C. C. A. 6) 44 F.(2d) 310; Payton's Adm'r v. Childers' Elec. Co., 228 Ky. 44, 14 S.W.(2d) 208; MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.(2d) 122; Coca-Cola Bottling Works v. Shelton, 214 Ky. 118, 282 S. W. 778; Keep v. National Tube Co. (C. C. N. J.) 154 F. 121.

Some authorities hold that the seller or vendor must have actual knowledge of such defect or danger. Huset v. J. I. Case Thresh. M. Co., supra; Laudeman v. Russell & Co., 46 Ind. App. 32, 91 N. E. 822; Lebourdais v. Vitrified Wheel Co., 194 Mass. 341, 80 N. E. 482; Tipton v. Barnard & Leas Mfg. Co., 302 Mo. 162, 257 S. W. 791; Bates v. Batey & Co., Ltd., 3 K. B. 351. See, also, Krahn v. J. L. Owens Co., 125 Minn. 33, 145 N. W. 626, 51 L. R. A. (N. S.) 650.

Others, especially where the defect is latent and there is a duty of inspection, hold that knowledge may be implied where ordinary care in inspection would have disclosed the defect. Heckel v. Ford Motor Co., 101 N. J. Law, 385, 128 A. 242, 39 A. L. R. 989; Coakley v. Prentiss-Wabers Stove Co., 182 Wis. 94, 195 N. W. 388; Cashwell v. Fayetteville Pepsi-Cola Bottling Works, 174 N. C. 324, 93 S. E. 901; Johnson v. Cadillac Motor Car Co. (C. C. A. 2) 261 F. 878, 8 A. L. R. 1023; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.(2d) 122.

I recognize that the rules laid down in the Huset Case have been expanded and enlarged by the later decisions, and that the principles announced in MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, 1053, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, have received such widespread judicial approval that they may be regarded as stating the now accepted law on this subject. But, even under the modern decisions, in order for the duty to arise the article or instrumentality must be either inherently and imminently dangerous, or must become immi-

nently dangerous when applied to its intended use in the usual and customary manner.

In the MacPherson Case, the court said: "The principle that the danger must be imminent does not change, but the things subject to the principle do change."

I assume that a steam heating boiler or furnace so defectively designed or manufactured that it will not retain the fire therein when used as a part of a heating unit, its intended use, in the usual and customary manner, is imminently dangerous.

The question here presented is not whether the boiler was defectively constructed or constructed of defective materials, but whether it, and approximately 40,000 other boilers like it manufactured and sold by the defendant, were defectively designed, in that the smokehood was not securely fastened to the dome; and whether the defendant was negligent in so designing them.

Was there substantial evidence from which the jury could find an affirmative answer to that question?

There was no direct evidence of any act or omission on the part of defendant constituting negligence. Negligence must be inferred from the fact that the boiler was defectively designed. In other words, the jury must have first found that the boiler was defectively designed and then inferred therefrom that the defendant was negligent in the particulars alleged. It is my opinion that there was no substantial proof that the boiler was defectively designed, and hence no basis existed for such inference.

To properly design a furnace is not a simple undertaking. The problem is not only to retain the fire within the furnace and utilize the heat therefrom, but not to so restrain the expansive force generated by ignition of accumulated gases within the furnace as to cause damage from explosion. It cannot be solved by rigidly constructing the furnace and affording no elasticity to relieve the force of gas explosion. If such force is unduly restrained, a terrifically damaging explosion would result. Means must be provided, therefore, to restrain the fire and at the same time to release the force of such explosions so as not to cause damage. Hence the proper designing of a furnace is a highly specialized and technical art requiring expert training, skill, and experience of a high order. It involves engineering and technical knowledge and experience concerning which the lay mind knows nothing. In cases where the facts essential to be established involve questions of expert knowledge and skill, with respect to which the layman has no knowledge and concerning which a jury cannot form a correct opinion of its own, uncontradicted and unimpeached expert evidence thereof may not be disregarded; and where such facts are not established by expert evidence, proof thereof necessarily fails. Ewing v. Goode (C. C. Ohio) 78 F. 442, 444; Harris v. Nashville, C. & St. L. R. Co., 153 Ala. 139, 44 So. 962, 14 L. R. A. (N. S.) 261; Kerwin v. Friedman, 127 Mo. App. 519, 105 S. W. 1102; Leitch v. Atlantic Mut. Ins. Co., 66 N. Y. 100; Hart v. Brooklyn, 31 App. Div. 517, 52 N. Y. S. 113; In re Butt's Estate, 181 Wis. 141, 193 N. W. 988; Diamond Alkali Co. v. Heiner (C. C. A. 3) 60 F.(2d) 505, 510; U. S. v. Lumbra (C. C. A. 2) 63 F.(2d) 796. See, also, Burton v. Neill, 140 Iowa, 141, 118 N. W. 302, 17 Ann. Cas. 532.

In Ewing v. Goode, supra, the late Chief Justice Taft, then a Circuit Judge of the Sixth Circuit, said:

"In many cases, expert evidence, though all tending one way, is not conclusive upon the court and jury, but the latter, as men of affairs, may draw their own inferences from the facts, and accept or reject the statements of experts; but such cases are where the subject of discussion is on the border line between the domain of general and expert knowledge, as, for instance, where the value of land is involved, or where the value of professional services is in dispute. There the mode of reaching conclusions from the facts when stated is not so different from the inferences of common knowledge that expert testimony can be anything more than a mere guide. But when a case concerns the highly specialized art of treating an eye for cataract, or for the mysterious and dread disease of glaucoma, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, *where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury.*" (Italics mine.)

The question of whether the boiler was defectively designed was one upon which the jury could not form a correct opinion of its own. The existence or non-existence of such defect could only be established by expert evidence.

To establish that the boiler was defectively designed, plaintiffs called two witnesses: Wm. H. Larimer and Harvey A. Gandrup. Neither had had technical education or training in the designing and manufacturing of

steam heating boilers, or in the art of heating engineering. The practical experience of each had been limited to selling and installing furnaces.

On the question of the alleged defect in design, Larimer testified: "There might be a little more safety in having the smokehood fastened as you term it. However * * * any explosion great enough to move that smokehood will press apart some part of the smoke pipe or some other part of the boiler."

Gandrup testified as follows:

"Q. * * * What would you say as to the failure to securely fasten the smokehood to the top of the boiler, as to whether that is a defect in the design or construction of the boiler? A. I would say it was a defect in the design of the boiler. * * *

"Q. And for what reason * * *? A. My determination that this boiler is defective in design is based upon my conclusion that the smokehood blew off and caused the fire in the Henderson residence. That is the only basis which I have for saying that the boiler is defective in design."

To establish that the boiler was not defectively designed, the defendant called Jas. F. McIntyre and Frank G. Parker.

McIntyre testified that he was vice-president of defendant in charge of engineering and manufacturing; that he graduated from the Engineering Department of the University of Illinois in 1907, having specialized in heating and ventilation; that he was a member of the American Society of Mechanical Engineers and the American Society of Heating and Ventilating Engineers; that the design of the boiler in question was developed in 1926; that the boiler is made in four parts: base, fire pot, intermediate section, and smoke dome; that there is a fire door in the fire pot through which coal or other fuel is fed into the furnace; that the fire door also admits air over the furnace to complete the combustion; that there is also a door in the base section and a clinker door on a level with the grate; that above the fire door is a clean-out door; that in the smokehood there is a butterfly draft door for checking the intensity of the draft produced by the chimney; that there is also a butterfly door in the base section for the admission of air below the fuel bed to stimulate combustion; that a ring or rib is cast integrally with the dome approximately two inches larger in diameter than the opening through the dome; that the smokehood is set inside of such ring and sealed with furnace putty; and that over 40,-000 boilers of this design had been sold by the defendant.

He further testified that confinement of gases increases the severity of an explosion; that to relieve the boiler of gas pressure, the fire door is so constructed as to open when a slight pressure is applied against the inside surface, the clean-out door is likewise constructed, and the smoke dome is not rigidly affixed; that in addition to these doors there is 25% free air at all times, allowing the chimney to carry away the gases and thus preventing an accumulation of gas under pressure.

He also testified as follows:

"The design * * * is in accordance with the best known engineering practice and knowledge. Its design, as a low pressure boiler, has been accepted and used in the heating business in this country for a period exceeding twenty-five years. I do not believe that there is any defect in the design of this boiler. I know of no alteration or improvement which could be made to improve the safety of its design in operation. The fastening of the smokehood rigidly by bolts, or by having it cast integrally with the boiler top, in my belief, would be contrary to good engineering practice, as an attempt to restrain a force such as you might get with an explosion. The engineering principle followed in this design is to provide for relief rather than restraint. It is my belief that all the safeguards have been provided to furnish additional relief from any rapid combustions amounting to an explosion of gas in the design and construction of this boiler that could be provided without destroying its usefulness as a heating boiler. As chief engineer of defendant company, I have made a study of that particular question. This boiler represents the last word as a result of my study and experience. If this boiler * * * is properly operated, it is a safe device or appliance as distinguished from a dangerous one."

Parker testified that he graduated from the School of Technology at Manchester, England, in 1913; that he had been assistant chief inspector for the Hartford Steam Boiler Inspection Insurance Company since 1925; that the boiler in question was constructed in accordance with the construction code of the American Society of Mechnical Engineers; that the smokehood was attached in accordance with recognized design and was free from defect; that it would be impossible to cast the smokehood integrally with the boiler on account of the necessity of allowing for expansion stresses; that to be so cast

would create hazards rather than prevent them; that it would be like putting a charge of dynamite under a person's house to install a boiler so constructed; and that such boilers should be constructed so as to relieve rather than confine combustible gases.

Larimer admitted that he was not an expert on boiler designing, and his testimony, if competent, fell short of proof that the failure to securely fasten the smokehood to the dome rendered the boiler defective in design.

Gandrup likewise was not qualified as an expert. His statement that the boiler was defectively designed was not predicated upon any expert knowledge or experience, but upon an unsound and illogical premise, namely, that the accident had occurred. It is an established principle that, except in exceptional cases falling within the doctrine of res ipsa loquitur, the mere fact that an accident has resulted in injury to a person or property does not authorize the presumption or inference of negligence on the part of a defendant. Looney v. Metropolitan R. R. Co., 200 U. S. 480, 486, 26 S. Ct. 303, 305, 50 L. Ed. 564; Sweeney v. Erving, 228 U. S. 233, 238, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; Leahy v. Detroit, M. & T. Short Line R. (C. C. A. 6) 240 F. 82.

In Looney v. Railroad Co., supra, the court said: "A defect cannot be inferred from the mere fact of an injury."

Against this is the evidence of men who by education, training, and experience are experts in the design and construction of steam heating boilers. They testified that the design of the boiler was not defective and particularly not defective in the respect alleged, in that the smokehood was not securely attached to the dome; and that to rigidly attach the smokehood to the dome would increase the hazard from explosion of gases, because it would confine rather than relieve the expansive force resulting from such explosions.

It is my opinion that neither Larimer nor Gandrup was qualified to testify as an expert on the question of defect in design of the boiler; that Larimer did not testify that the boiler was defectively designed, and that Gandrup destroyed the probative value, if any, of his statement that the design was defective by giving the predicate on which he based it; that the qualifications of the expert witnesses called by the defendant were fully established; that such witnesses were not contradicted, impeached, nor in anywise discredited, and their evidence conclusively established that the design of the boiler was not defective.

Furthermore, the undisputed evidence shows that the boiler at the time of the accident was not being applied to its intended use in the usual and customary manner, in accordance with the directions furnished by the defendant.

Gandrup testified that he installed the boiler in accordance with the directions furnished therewith by the defendant; that he closed the joint between the dome of the boiler and the smokehood with furnace putty; that such putty did not tend to hold the smokehood in place, but merely made the joint air tight.

Henderson testified that an explosion occurred in the boiler on the day before Thanksgiving in 1931. It was apparently a severe explosion. Gandrup was called to repair the damage. He found the smokehood in place, but the putty ring was broken, so that smoke escaped through the joint, and the smoke pipe leading from the smokehood to the chimney was loosened and out of place.

Gandrup again closed the joint in accordance with defendant's instructions. He then went beyond the instructions and placed a heavy layer or ring of concrete four inches thick, made from a mixture of Portland cement, gravel and water around the smokehood and on top of the dome. When this concrete had set, it rigidly sealed the smokehood on to the top of the dome, and destroyed the principle of elasticity employed in the design of this boiler.

The boiler withstood the explosion which occurred the day before Thanksgiving and retained the fire. It failed to withstand the explosion which occurred at the time of the fire, after the joint had been made rigid with concrete. I am of the opinion that the departure from defendant's instructions relieved it from liability.

For these reasons I conclude that the motion for a directed verdict should have been granted.